14057

SNELLGROVE v. LIFE INS. CO. OF VIRGINIA

(179 S. E., 784)

*Messrs. Thomas, Lumpkin & Cain,* for appellant,

*Mr. E. J. Best,* for respondent,

May 6, 1935.

The opinion of the Court was delivered by Mr. Chief Justice Stabler.

On July 30, 1929, the defendant company insured the life of one John H. Haithcock in the sum of $1,000.00; the plaintiff, his daughter, being designated as beneficiary. Haithcock died in June, 1931, and this action was brought by the beneficiary in April, 1934, for the recovery of damages, both actual and punitive, alleged by her to have resulted from a fraudulent breach of the contract by the company.

The policy was issued in consideration of the payment, in advance, of $13.01 as a quarter-annual premium, and of a like amount on October 30, 1929, and quarterly thereafter during the continuance of the insurance; the usual grace period of thirty days being allowed. The policy also provided for its lapsing upon the nonpayment of premiums and for reinstatement of the insurance upon certain terms named.

The plaintiff alleged that, in accordance with an agreement between her and the agent of the company at the time he solicited the application for the insurance that he would call and collect the premiums due each quarter at her residence, "the defendant and its agent did collect the quarterly premiums due on said policy until about August, 1930, when the agent of the defendant willfully, intentionally and fraudulently in order to lapse said policy and to work a forfeiture of the same deliberately, intentionally and fraudulently refused to call and collect said quarterly premiums due on said policy. That before the last quarterly premium became due and before said policy became lapsed,

. plaintiff was temporarily absent from her home and left the money with which to pay the premium due at her home according to the agreement aforesaid but the said policy was lapsed before her return."

It was further alleged that application was made to have the policy of insurance reinstated, and that the plaintiff at the time paid the agent of the defendant the overdue premium of $13.01, which he accepted; but that reinstatement was refused and the premium so paid was retained by the company and converted to its own use.

The defendant filed an answer, in which it alleged that the property had lapsed during the lifetime of the insured for nonpayment of the quarter-annual premium which became due on July 30, 1930, and that the application for reinstatement of the insurance could not be accepted because, under the evidence submitted by Haithcock, it appeared that he had become uninsurable. It also specifically denied that it had been guilty of any wrongful, fraudulent, or deceitful practices in its relations with the insured or with the plaintiff, or that it had "breached any contractual obligation · owing to either of said parties."

On trial of the case, motions for a nonsuit and for a directed verdict, made on grounds which we will later consider, were overruled, and the jury found for the plaintiff both actual and punitive damages. A new trial was likewise refused, and from judgment entered on the verdict the defendant appeals.

We shall first consider the appellant's contention that the trial Court was in error in not directing a verdict for the defendant for the reason that the only inference to be drawn from the testimony is that the plaintiff permitted the policy to lapse for nonpayment of the premiums and that the defendant was not guilty of any wrongful or fraudulent act in connection therewith.

We are satisfied, from a reading of the record, which we have carefully reviewed, that in no event could the Court have directed a verdict in defendant's

favor as to actual damages. The plaintiff, the named bene-
ficiary, testified, among other things, that at the time the
insurance was taken out it was understood and agreed be-
tween her and Hudson, the company's agent, that she should
pay the premiums and that he should call at her home to
collect them; that he did so for nearly a year, but failed to
call for the one due July 30, 1930; that during the month of
August she was away from home for a while, but left the
money, $13.01, with her daughter, who lived with the wit-
ness, and directed her to pay the premium when the agent
came; that she relied on this agreement that she had with
the defendant, but when she returned home she found that
the agent had not called and that the policy had lapsed. She
further stated, as tending to show the agent's reason for
trying to lapse the policy, that he knew the insured was in
bad health. Her daughter also testified that $13.01 had
been left with her by her mother, with instructions that she
pay the premium on the policy when the agent came, but that
he never called for it. As strongly supporting the truth of
respondent's statement, it is admitted that the agent Hudson
collected the quarterly premiums for nearly a year by call-
ing at the home of the plaintiff to do so. The defendant
denied that any such agreement was made between the plain-
tiff and Hudson, and earnestly urges in argument that the
admission of this testimony by the trial Judge, over its
objection, was in violation of the rule that parol testimony
is inadmissible to vary the terms of a written contract.

We do not think that the rule invoked is applicable here.
The original policy, which the plaintiff testified she turned
over to the company and which it wrongfully failed to return
to her, could not be found. The defendant, however, sub-
mitted and introduced in evidence what was purported to
be a. photostatic copy of the kind of policy which it had
issued the insured. This form provided that each premium
was due and payable in advance at the home office of the
company in the City of Richmond, but would be accepted

elsewhere at the company's pleasure. There is no doubt that the defendant could waive this provision of the policy if it desired to do so; and in the case at bar the testimony objected to merely tended to establish the plaintiff's contention that there was waiver by the company of this provision as to where the premiums should be paid and as to how they should be collected, and was admissible for that purpose.

The trial Judge submitted to the jury the question whether the photostatic copy introduced in evidence was in the contract between the parties. He also submitted to them, in case they found this to be the contract, the question of waiver on the part of the company·of the provision as to the collection of the premiums. As already indicated, the insured, after the lapsing of the policy, made application to the company for reinstatement of the insurance, and the plaintiff testified that she paid the agent, for the purpose of such reinstatement, the amount of overdue premiums. The Court, therefore, properly charged the jury that if they found that the contract of insurance was wrongfully breached by the company as contended by the plaintiff, and that the beneficiary or the insured, or both of them, waived such breach by their conduct in relation to the matter, the respondent would have no case. We find no error as complained of.

As to punitive damages, the trial Judge, in disposing of defendant's motion for a directed verdict, said: "The thing that inclines me to send fraud to the jury now is that testimony that that receipt may not have the signature of that man." The receipt referred to, introduced in evidence by the defendant, was signed with the name of the insured, John H. Haithcock, and purported to show a refund to him by the company of the overdue premium which had been paid the defendant upon the filing with it of the application for reinstatement. The plaintiff testified that Hudson came to her home about September

20th and told her that the policy had lapsed for the non-payment of the premium due in July, but that he would have it reinstated; that she then paid him, as one of the requirements for reinstatement, the $13.01, for which he gave her a revival receipt; that this money, although the application for reinstatement was rejected, was never returned to her, and so far as he knew it was never paid to the insured, but that she was not "in position to say" that he did not get it. When shown the receipt in question she made the following statement: "I cannot say that this is his signature. * * * I wouldn't say it was or was not. * * * I won't deny that it is not." When W. E. Hentz, a witness for the defendant, and the manager of the district office of the company at Columbia, was on the stand, he compared the writing, "John H. Haithcock," the name signed to the refund receipt, with that of "J. H. Haithcock," the name signed to a receipt acknowledging "a part payment of the quarterly payment that became due January 30, 1930," and stated that "the signature is different. * * * I said there was some difference in it. I didn't say they were not signed by the same man. They look different like I said this signature of Mr. R. Hudson and this one, they look different also, but I did not witness either signature and I wouldn't say that either one of them signed them."

It was this testimony of the plaintiff and of Hentz, especially of Hentz, that induced the trial Judge, it seems, to submit the question of punitive damages to the jury; his conclusion being that a fraudulent act on the part of the company might be inferred therefrom. We think, however, that he was wrong in this. It will be observed that the testimony of the plaintiff, who doubtless knew very well the handwriting of her father, was of no probative value on this point, as she refused to say that it was not her father's signature. And while it is true that the testimony of Hentz was to the effect that the signature to the refund receipt was different from that to the other receipt, he refused to say

that the same man did not sign them both. As a matter of fact, although it appears that Hudson, the agent of the company, witnessed both receipts, Hentz refused to swear, although he was familiar with Hudson's signature, that either of these signatures was genuine, pointing out that there was "a good deal of difference" between them. On the whole, there was no proof that the name signed to the receipt for the payment of January 30, 1930, was the genuine signature of the insured, no evidence being offered by the plaintiff on that point. On the contrary, not considering the testimony of Hudson, who stated that the refund receipt "was duly signed by Mr. Haithcock in my presence and I witnessed his signature thereon," it is clear that, under the evidence, or the lack of it, the jury was left to conjecture as to which receipt, if either, was spurious. Certainly, as they did not have before them the signature of the insured, admitted or proved to be genuine, it was impossible for them to say that the signature of Haithcock to the refund receipt was not genuine. Hence, their verdict as to punitive damages was the result of conjecture on their part, and should not be allowed to stand. The exceptions, therefore, imputing error to the trial Court in refusing to direct a verdict for the defendant as to such damages, are sustained.

The conclusion which we have reached as to punitive damages makes it unnecessary to consider some of the other questions presented by the appeal. We notice, however, the complaint that the trial Judge, in charging the jury as follows, intimated to them that they should return a verdict for actual damages: "If you find that the plaintiff is only entitled to actual damages of $1,000.00 and interest, the form of your verdict would be, we find for the plaintiff so much," etc.

The contention is that the jury, from the use of the word "only" in the instructions given, gained the impression that the Court believed that the plaintiff had made out her case for actual damages and that they should so find. This con-

tention is without substantial merit. The Court at the time was instructing the jury as to the different verdicts that might be returned in the case, and in this immediate connection as to the form of their verdict should it be merely for actual damages; and even if conceded, as contended by appellant, that the use of "only" was unnecessary and improper, it clearly appears, when the charge is considered as a whole, that the error complained of was harmless.

As to actual damages, the judgment of the Court below is affirmed; as to punitive damages, it is reversed.

MESSRS. JUSTICES CARTER and BONHAM and MESSRS. ACTING ASSOCIATE JUSTICES T. S. SEASE and A. L. GASTON concur.