14518

RILEY v. LIFE & CASUALTY INS. CO. OF TENNESSEE

(192 S. E., 394)

March, 1937.

*Messrs. C. T. McDonald* and *Sidney F. Keeble,* for appellant, cite:

*Messrs. McEachin & Townsend,* for respondent, cite:

July 21, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

On October 10, 1932, appellant issued its contract or policy of insurance to respondent, whereby it promised and agreed to pay to the beneficiary therein named, upon due proof of the death of the insured, the sum of $155.00.

This form of policy was known as an industrial policy or industrial insurance. The premium on this policy was 25 cents weekly, in advance, due and payable on Monday of each week.

The policy contained the following provision with reference to "payment of premiums":

" * * * All premiums are payable at the Home Office of the Company, but may be paid to an authorized representative of the Company; provided that such payment, to be binding on the Company, must be entered at the time in the Premium Receipt Book provided by the Company for entry of premiums payable on this policy. If for any reason the premium be not called for when due, it shall be the duty of the policyholder to bring or send said premium to the Home Office of the Company or to one of its District Offices."

There was a "grace period" of four calendar weeks.

At the time of delivery of the policy appellant was furnished with a premium receipt book in which was written the number of the policy, the name of the insured, and the amount of the premium. In bold type on this receipt book there was printed the following:

"Policy holders must immediately notify this Branch Office, or the Home Office, of change of address.

"Premiums are due each Monday, in advance. If the agent does not collect weekly, send your premiums to the Branch Office or to the Home Office in Nashville, Tenn. * * * "

An agent of the appellant went to the home of respondent every week for the purpose of collecting the weekly premium, and all premiums were paid, as appears from the receipt book from October 3, 1932, to and inclusive of July

15, 1935. The policy being dated October 10, 1932, premiums actually paid covered a period to July 22, 1932. On August 26, 1935, or for the week of August 26, 1935, appellant lapsed the policy for the nonpayment of premiums.

On November 20, 1936, respondent brought an action against appellant, claiming actual and punitive damages in the sum of $3,000.00, for the alleged fraudulent cancellation of the policy hereinbefore described.

It is alleged in the complaint that appellant's agent had always assured respondent that he could depend absolutely upon collection at his home; "that suddenly and without warning of any sort and in furtherance of a fraudulent scheme and design to lapse and cancel the said policy of insurance, the defendant's agent ceased to call at the plaintiff's home and failed to call at the plaintiff's home for four weeks; that immediately upon the passage of four weeks the defendant declared the said policy lapsed and canceled the plaintiff's policy of insurance and thereafter refused to accept the premium in arrears or to renew the said policy of insurance." It is then alleged that respondent is nearly fifty-nine years of age, and at the time of the lapse and fraudulent cancellation of the policy, respondent was obviously failing in health and had since suffered a severe and disabling illness and was then uninsurable. It is further alleged, in varied form, that the foregoing actions were part of a fraudulent scheme and design to lapse and cancel respondent's policy of insurance; that the conduct of appellant was willful, wanton, and fraudulent, and a deliberate scheme and design to deprive respondent of a valuable policy of disability and life insurance.

The answer of the appellant was a general denial, admitting, however, the issuing of the policy, the subject of the controversy, the payment of premiums thereon until about July 22, 1935, and then alleged that the cancellation of the policy was due to the failure and refusal of respondent to pay further premiums.

Upon a trial of the case, when respondent rested his case, appellant moved for a nonsuit upon the ground that the testimony was not susceptible of any inference other than that the policy was lapsed because of nonpayment of premiums. This motion was refused. After all the testimony was in, appellant moved for a directed verdict generally on the same ground as for nonsuit, which was refused, as was an additional motion for a directed verdict as to punitive damages.

The jury having rendered a verdict in favor of respondent in the sum of $36.00 actual damages, and $1,000.00 punitive damages, the appellant comes to this Court on fourteen exceptions alleging error on the part of the trial Judge, but in printed argument states that these exceptions, in fact, raise but two questions. We are in agreement with this, one of the questions being succinctly stated in respondent's brief to be:

"Did the appellant establish a custom of collecting premiums at the respondent's home which required the appellant to inform the respondent of intended abandonment of the custom, and which custom constituted a waiver of the requirement of the policy that the premiums must be paid at the Home Office if the agent failed to collect?"

And the other question is correctly and aptly stated in appellant's brief, and is as follows:

"Was the trial court in error in refusing to direct a verdict in favor of defendant-appellant on the ground that there was no proper or competent evidence to show that the cancellation of the policy was due to any fraudulent act and scheme on the part of the appellant but was due to the failure of respondent to pay the premiums until the policy was automatically cancelled by reason of the failure of respondent to pay premiums for four weeks prior to cancellation of policy."

The appellant takes the position that even if its agent agreed to call at the home of respondent and collect the pre-

miums, and assured respondent that he would always do so, it was purely a personal agreement, and could not be relied upon by respondent in that it varied the terms of the written contract as to the method of the payment of the premium, hereinbefore set out and cites the case of *Perry v. N. C. Mutual Life Ins. Co.*, 180 S. C., 72, 185 S. E., 47.

The facts of the *Perry case* are not at all analogous to the facts of the case under discussion, and therefore the *Perry case* is not applicable. In this case, according to the testimony for respondent, the agent of appellant called regularly at the home of respondent from the inception of the insurance contract and collected the premiums until and inclusive of July 19, 1935, and then without any notice that the premiums would not be called for, stopped calling for the premiums. It was also in testimony that the form policy carried by respondent was known as industrial insurance, and that the premiums on these policies were collected by the agent going personally each week to the home or place of business of those thus insured or having policies of insurance. The facts of this case are much stronger than those in the case of *Snellgrove v. Life Ins. Co. of Va.*, 176 S. C., 178, 179 S. E., 784, in which it was held that where an agent of the insurance company had collected quarterly premiums for nearly a year by calling at the home of the insured, it was evidence of waiver of the written contract as to the manner and method of payment of premiums.

> There was ample testimony requiring this case to be submitted to the jury on the question of waiver on the part of the company of the provision as to the collection of the premiums.

The testimony on behalf of respondent is to the effect that he had carried this policy of insurance by paying the premiums promptly when called for by the agent of appellant, and always within the grace period, from October 10 (3), 1932, to July 15 (22), 1936; that he began to fail in health and at the time the agent stopped calling for the pre-

miums, it was obvious that his health was failing; that he was not given any notice to pay his premiums in a different manner; that when he undertook to pay his premiums, he learned that the policy had been lapsed and canceled for the nonpayment of premiums, and the premiums tendered were refused; that the district manager of appellant, when approached about accepting the past-due premiums, stated that he remembered the case, and had gone over there and found respondent in bad health; that he was not insurable; and that he had stopped the agents from going by to collect the premiums and had lapsed the policy long ago.

Under the foregoing testimony, it became the duty of the trial Judge to submit to the jury the issue if there was a wrongful and fraudulent cancellation of the policy accompanied by a fraudulent act.

In *Schultz v. Benefit Ass'n of Railway Employees of Chicago,* 175 S. C., 182, 178 S. E., 867, 869, it is stated: "This court had (has?) held repeatedly that, where an insurance company refuses to collect premiums and it is clearly shown that the intention of the company is to cancel out policies which are existent and upon which rights have accrued, such action on the part of the company will sustain a verdict for punitive damages." Citing several cases.

All exceptions are overruled and the judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.