## 16750

SIMMONS v. SERVICE LIFE & HEALTH INS. CO.
(76 S. E. (2d) 288)

*Mr. W. Harper Welborn,* of Anderson, *for Appellant,*

*Messrs. Watkins & Watkins,* of Anderson, *for Respondent,*

June 2, 1953.

STUKES, Justice.

The plaintiff, now appellant, brought this action for $10,-000.00 actual and punitive damages for the alleged fraudulent breach of a contract of life insurance with death benefit of $150.00. In the extracts from the policy which are included in the appeal record, no other benefit appears. However, the complaint, which is included in full in the record, contains in the sixth paragraph the allegation that the in-

sured-plaintiff was totally and permanently disabled when the policy, quoting from the complaint, "was lapsed as the agent * * * well knew or should have known." The defendant in its answer merely denies information sufficient to form a belief as to this allegation. There was evidence in support of the allegation and plaintiff argues it in his appeal brief but the issue need not be considered for the purpose of the disposition of the appeal, and will not because of the apparently deficient record.

The policy was dated and issued August 16, 1948, and the stated age of the insured was seventy-nine. He testified that he could read and write a little but his testimony indicates that he is practically illiterate. He appears to come within the description, "ignorant and unwary." *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886, 887, 136 A. L. R. 1. The premium was $1.22 per week, and the insured's daughter, who then lived with him and also testified, paid the premiums to the agent of the company who called at the insured's home, quoting from her testimony, "$4.88 some months and some months I had to pay him an extra week when the month had five Mondays in it." She further testified that the payments were made from the insured's "old age pension check," which she handled for him. However, she appears to be only a little more literate than her aged father.

Originally the insured's entirely illiterate wife was the beneficiary but after her death on Dec. 11, 1948, the insured's daughter was substituted as beneficiary and a duplicate policy was issued under date of March 28, 1949.

An agent of the company called regularly each month and collected the premiums through November 1951, to that date apparently aggregating considerably more than the "face" of the policy; but no agent of the company afterward called or communicated with the insured or beneficiary, and coincidentally the insured's premium receipt book or card, which was regularly kept in his home with the policy, could not be

found. The following is from the testimony of the plaintiff-insured:

"Q. Did you ever refuse to pay him (the agent)? A. Never have.

"Q. When was the last time you paid him? A. The last time I paid him he never come back no more.

"Q. He didn't come back any more? A. No, sir.

"Q. When was that? A. In November.

"Q. Last year? A. Yes, sir."

The policy provided with respect to premium payments as follows, which should be compared with the corresponding provision in the *Riley case*, cited *infra*:

"Premium payments will be recognized by the Company only if made to an authorized representative of the Company on or before the due date of such premium. Failure of the representative to call for a premium collection when due shall not excuse non-payment of such premium, and in such case the Insured is required to make payment of the premium at an office of the Company."

No effort was made by the insured or his daughter, the beneficiary, to locate an office of the company for the payment of the premiums after the agent ceased to call for them, but this action was brought on April 29, 1952, and the answer of the insurer denies all liability.

Lapse of the policy by the insurer for non-payment of premiums was alleged in the complaint and admitted in the answer so there is no issue thereabout. The cause of action is for the claimed wrongful lapse that resulted from the cessation of the agent's calls to collect the premiums, which it is alleged was wilful and fraudulent. For a case of similar import see *Clinkscales v. North Carolina Mutual Life Ins. Co.,* 201 S. C. 375, 23 S. E. (2d) 1.

A physician testified in behalf of the appellant-insured that for four or five years the latter had been, in effect, uninsurable, suffering from a bad sore on his leg (which was ex-

hibited to the jury), shortness of breath, heart trouble and, at times, digestive trouble, from all of which he was incapacitated for work. Appellant testified that he had been unable to work for years and that when first solicited at his home by the company's agent, he told the latter that he was too old for insurance and was sick, but the agent assured him otherwise and said that, quoting from appellant's testimony, "It (the insurance) would bury me when I was dead. Q. To bury you? A. Yes, sir, that is what it is for." He said that he had been told by his mother that he was born, quoting again from his testimony, "The second year after freedom," but he admitted on cross-examination that he told the agent he was born on Jan. 3, 1870, which was entered in the application; on redirect he said he told the agent his age as given him by his mother. There is now relatively little difference in these dates of birth and no question has been made thereabout.

Upon the conclusion of plaintiff's evidence, counsel for defendant, now respondent, moved for nonsuit on the ground that there was no proof of fraudulent breach of the contract, accompanied by a fraudulent act, whereupon the court *ex mero motu* directed the jury to return a verdict for plaintiff for $150.00 actual damages, which of course they did. Only plaintiff appealed and his contention is that his evidence made an issue of liability of the defendant, now respondent, for punitive damages for fraudulent breach of the insurance contract, accompanied by fraudulent act or acts.

The appeal is sustained upon the authority of *Riley v. Life & Casualty Ins. Co. of Tennessee,* 184 S. C. 383, 192 S. E. 394, mentioned *supra.* Digests of it and other decisions of some relevancy may be found by reference to 11 South Carolina Digest, Insurance, Key No. 237, page 478 *et seq.* See generally, on the recoverability of punitive damages in cases of fraudulent breach of contract, accompanied by a fraudulent act, *West v. Service Life & Health Ins. Co.,* 220 S. C. 198, 66 S. E. (2d) 816.

In the *Riley case* [ 184 S. C. 383, 192 S. E. 396], opinion by the present Chief Justice, one of the questions on appeal was the following: "Did the appellant [the insurer] establish a custom of collecting premiums at the respondent's home which required the appellant to inform the respondent of intended abandonment of the custom, and which custom constituted a waiver of the requirement of the policy that the premiums must be paid at the Home Office if the agent failed to collect?" The evidence adduced in that case was found ample to support the verdict for actual and punitive damages, which, in effect, found that there was such an established custom and that the deliberate departure from it was an act of fraud in the breach of the insurance contract by the company. The evidence here is reasonably susceptible of the same inference. It made an issue for the jury.

The case in hand is quite unusual in that it involves a policy of insurance upon the life of a sick old man who, under the evidence, was physically incapacitated by age and various illnesses when the policy was issued; and the company's agents continued to call regularly at his home and collect the relatively large premiums until they amounted, by our calculation, to the sum of over $200.00 upon a policy whose gross value at the death of the insured, if then in force, was only $150.00; then the collectors ceased to come and the policy was lapsed or cancelled by the insurer for failure of payment of further premiums. These facts are derived, of course, from plaintiff's evidence which is all that is before us, besides the pleadings. In the answer it is admitted that the premiums were paid through November 1951.

It must be remembered that the appeal is from an order on motion for nonsuit although it directed verdict for actual damages for the face amount of the policy. Involuntary nonsuit on the merits is proper only when the evidence of the plaintiff affirmatively shows as a matter of law that he is not entitled to the relief sought in the complaint. *Smith v. Volunteer State Life Ins. Co.,* 201 S. C. 291, 22 S. E. (2d) 885. In view of the evidence which has been

stated, nonsuit upon the cause of action for punitive damages was error and the direction of verdict for plaintiff for actual damages was not even sought at the time of the disposition which is under review. The propriety of the amount of the latter will not be considered because it falls with reversal of the order.

Appellant's brief concludes with the plea that this directed verdict, from the order for which he has appealed, be affirmed as his actual damages and the case remanded for trial only of the issue of punitive damages. The position is patently untenable, in the first place because no such proposition is presented by his exceptions, and secondly because only his evidence was heard in the trial under review. (There may well be other reasons.) Incidentally, we express no opinion on the measure of damages, as to which the jury will have to be properly instructed in any subsequent trial. Our holding is only that appellant's evidence, standing alone as it now does, made his right to actual and punitive damages issues for the jury.

Reversed and remanded for new trial.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.