17116

## MARIE BROACH RAINES, Respondent, v. The LIFE INSURANCE COMPANY OF VIRGINIA, Appellant

(91 S. E. (2d) 286)

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondent,*

February 7, 1956.

TAYLOR, Justice.

This appeal comes from the Civil Court of Florence County where respondent brought action for the alleged fraudulent cancellation of a contract for hospitalization insurance issued by appellant. The case came on for trial before the Honorable R. W. Sharkey and a jury at the November, 1954, Term, resulting in a verdict in favor of respondent for $81.60 actual damages and $550.00 punitive damages. Motions for a nonsuit, directed verdict, and judgment *non obstante veredicto* or a new trial in the alternative were timely made and refused.

The policy in question bears the date May 19, 1952, and provides limited benefits for hospital expense, surgical fees, and accidents, with respondent being the named insured and six children of her sister, referred to as the McKissick children, listed as eligible members of the insured's family. Respondent was unmarried at the time. The weekly premium thereon was $1.40 due Monday of each week.

The premium receipt book shows payments through the week beginning May 11, 1953. However, such payments were not always made weekly. In several instances, three to five weeks were paid at one time during the grace pe-

riod. An entry as of April 28, shows that the premiums were paid through the week beginning May 11, 1953.

On June 10, 1953, two of appellant's agents called at respondent's home at Timmonsville, South Carolina, for the purpose of making their regular collections. The mother of the McKissick children had previously died on May 18, of that year, and the children had been placed in an orphanage. Respondent, having married since the policy was issued, requested the McKissick children be eliminated from the policy and her husband substituted therefor. The agents told respondent that this could be done but that it was necessary to have the policy in order to accomplish the change. The policy, however, was not available but was in Florence, South Carolina, in possession of respondent's mother who lived at Five Points. Appellant's agent then offered to pick up the policy but did not do so, stating that he had called at the designated address but was unable to locate respondent's mother. Respondent at that time did not have the money necessary to pay the premiums due but told the agents that she would make the payment at the office in Florence on the next day and did so pay $5.60, or four weekly premiums, on that day, June 11, 1953, which covered the premiums past due and with the grace period operated to keep the policy in force until July 14, 1953.

On July 20, 1953, respondent again went to appellant's office in Florence and paid the sum of $4.20 and was issued a conditional receipt therefor. Thereafter, on August 3, 1953, two of appellant's agents called upon respondent and tendered her the return of the last payment, stating that the policy had expired for nonpayment of premium and had been cancelled but that she could pay the additional sum of $2.80, the amount sufficient to bring the arrears up to date, and the policy would be reinstated. This respondent refused to do.

Respondent in order to sustain her allegation of wrongful cancellation relies principally upon the failure of appel-

lant's agent to secure from her mother the policy, to substitute her husband in lieu of the McKissick children which would operate to reduce the amount of premiums, and their failure to call at her home to collect the premiums after June 10, 1953. Appellant's agent testified that he attempted to secure the policy from respondent's mother but had been unable to locate her at the address given. However, the duty was upon the insured to furnish appellant with the policy and written application in order to substitute other individuals eligible for insurance under the terms of the policy.

The failure of appellant's agent to report back to the insured that he had been unable to locate her mother and secure the policy may aptly be described as negligence but under our view cannot be classed as fraud. The slightest care on the part of the insured would have disclosed that the agent had not secured the policy and that it was still in the hands of her mother.

Appellant's agents testified that they had been collecting the premiums at respondent's home every two weeks and that they continued to make their regular calls, but upon making their call after June 10, 1953, respondent was not at home; and there is no evidence to the contrary.

Respondent testified that she had left sufficient money at her home with her mother or her sister, Mrs. McKissick, for the purpose of paying the premiums. This testimony, however, referred to a period of time when the premiums were paid, as the sister, Mrs. McKissick, died on May 18th; and, thereafter, on June 11, respondent paid the premiums due at appellant's office in Florence; and respondent's mother was not at respondent's home on June 10, by her own testimony as appellant's agent was instructed by respondent where her mother lived in Florence in order that he might secure the policy from her at her home in Florence.

Respondent seeks to strengthen her position by contending that on one occasion appellant's agents called at her home when she was four months pregnant and found her

confined to her bed and that they stopped calling for further premiums with the intent of causing the policy to lapse. As pointed out heretofore, the evidence does not sustain this contention further. It is evident that the maternity benefits in the policy were not available to the insured since she and her spouse had not been insured thereunder for ten consecutive months immediately prior to the loss.

Where it clearly appears that an insurance company discontinues the collection of premiums with the intention of causing the policy, upon which rights have accrued to lapse, a verdict for punitive damages will not be disturbed. *Schultz v. Benefit Ass'n of Railway Employees of Chicago, Ill.,* 175 S. C. 182, 178 S. E. 867; *Wilkes v. Carolina Life Ins. Co.,* 166 S. C. 475, 165 S. E. 188; *McLeod v. Metropolitan Life Ins. Co.,* 167 S. C. 309, 166 S. E. 343; *Sutton v. Continental Casualty Co.,* 168 S. C. 372, 167 S. E. 647; *Mack v. Life & Casualty Ins. Co.,* 171 S. C. 350, 172 S. E. 305.

The policy in question was renewable weekly at the option of the company, and the company could decline such renewal at any time upon giving the insured five days' notice in writing. There is no showing of illiteracy or overreaching; no claim had been filed for benefits under the policy; no rights had accrued under the policy; no contention that respondent could not get other coverage; and there is no evidence from which it could be clearly found that the company had refused to collect the premiums with the intention of canceling out the policy. Therefore, the verdict for punitive damages cannot be permitted to stand. *Riley v. Life & Casualty Ins. Co. of Tennessee,* 184 S. C. 383, 192 S. E. 394, and *Simmons v. Service Life & Health Ins. Co.,* 223 S. C. 407, 76 S. E. (2d) 288. *Harris v. United Insurance Co.,* 227 S. C. 593, 88 S. E. (2d) 672.

The evidence is susceptible of no other conclusion but that the policy had lapsed for nonpayment of premiums, and it is not shown that such lapse was

brought about by appellant refusing to collect the premiums at respondent's home with the clear intention of lapsing the policy.

We are, therefore, of the opinion that the judgment and order appealed from should be reversed and set aside; and it is so ordered. Reversed.

STUKES, OXNER and LEGGE, JJ., and J. WOODROW LEWIS, Acting Associate Justice, concur.