14197

## SMITH v. BENEFIT ASS'N OF RAILWAY EMPLOYEES

(183 S. E., 318)

*Messrs. Royall & Wright,* for appellant,

*Messrs. McEachin & Townsend,* for respondent,

January 3, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This case has heretofore been before this Court, but none

of the questions raised in the present appeal were decided. See 175 S. C., 347, 179 S. E., 324.

The action arose out of a health and accident insurance policy issued by appellant to respondent April 21, 1931, providing for certain definite benefits, and referred to throughout the trial as Policy No. 24. When this policy was issued, the occupation of respondent was given as trainmaster and the beneficiary as Mrs. D. A. Smith. However, shortly thereafter appellant by letter informed respondent that their records had been changed to conform to the true facts, by giving the correct occupation of respondent, and substituting the individual name of Mrs. Smith for her husband's (respondent) initials. Respondent regularly paid his premiums on said policy, but had never had occasion to claim any benefits thereunder. The appellant had the right to cancel the policy upon thirty days' written notice to respondent; the following provision being in said policy: "The insured may terminate this policy contract and revoke his pay order at the expiration of thirty (30) days from 12 o'clock noon of the date of written notice delivered at or mailed to the home office of the association, and the association may terminate this policy contract at the expiration of thirty (30) days from 12 o'clock noon of the date of written notice delivered to the insured or mailed to his last known address, but such termination by the association shall be without prejudice to any claim accrued or existing at date of termination. In the event this policy contract is terminated by either party hereto, the association shall pay the insured by cash or check the prorata unearned portion, if any, on the date of termination, of the premiums actually paid by the insured."

On July 19, 1933, one C. D. Fulk, an agent and representative of appellant, came from Chicago, the home office of appellant, saw respondent, and stated that, where there were mistakes made in policies, he was out to correct them, and that there were two mistakes in respondent's policy, and asked for the policy. Before seeing the policy, this agent told

respondent his occupation should be shown as flagman instead of "T. M." (trainmaster), and his wife's name should appear as "Mrs. Ada Sue Smith" and not as "Mrs. D. A. Smith." The agent stated that, should respondent be killed in an accident, it was very doubtful if Mrs. Smith could collect under the policy on account of these errors. Upon these statements being made to him, respondent asked how these errors could be cured, and appellant's representative stated he would have to take up the policy, turn it in, and issue another. Appellant's representative was then asked if the new policy he would issue would contain the same benefits, and was informed, "Identically the same." Respondent thereupon turned over the policy (No. 24) to appellant's representative. When the policy was handed appellant's representative, he then suggested a new policy, which would increase the sick benefit from $60.00 per month to $80.00, and, upon being asked if this increase would affect the terms of the policy then in force, otherwise, was assured that the new policy would be the same kind 100 per cent. According to the testimony of respondent, the new policy necessitated the payment of an additional premium of about $1.00 per month (the exact amount was 95 cents per month).

At the time of this transaction, according to respondent, the old policy, No. 24, was paid up for two months, and he gave appellant's representative about $2.00 to pay the difference in premiums on the new policy to be issued. In about two or three weeks, or possibly more, the new policy arrived, which policy is known as Policy No. 20. Respondent examined same, and found that there were material differences in the terms of the two policies as to benefits, and, according to his testimony, wrote appellant that its agent had misrepresented things to him and got old policy from him, and he did not want the one they sent him. The appellant refused to give up the old policy and never offered to return any premiums, but wrote respondent on September 7, 1933, as follows:

"Your letter has been received and we are very sorry to advise that it will be impossible for the Association to continue furnishing you protection under your old form of policy. As must have been explained to you by our representative it has become necessary for the association to take some action on certain forms of policies so as to put all of our members on an equal footing.

"We are sorry that you do not want to continue with us under this new form of policy. While it does not furnish quite as liberal benefits as the old one, still it will afford you some excellent protection. We are marking our records to show your account cancelled as of September 30, this being in accordance with the thirty-day cancellation clause.

"Regretting the loss of your membership but with best wishes, we are."

The new policy, No. 20, also provided for cancellation upon 30 days' written notice.

On the foregoing statement of facts, testified to by respondent upon the trial of the case, respondent based his complaint alleging that through a fraudulent scheme on the part of appellant he had been deprived of his policy of insurance, his rights thereunder, and his membership in appellant, to his damage in the amount of $3,000.00.

The appellant answered, admitting the formal portions of the complaint, but denied all fraud and misrepresentation in obtaining from respondent Policy No. 24, and set forth its right under the terms of the policy to cancel same; alleged that Policy No. 20 contained benefits in excess of Policy No. 24 as to principal indemnities for accident and illness; that Policy No. 20 was issued respondent upon his written application therefor; and that the cancellation thereof was brought about by respondent notifying appellant that he would not make further premium payments on same. Appellant further answered as follows:

"That owing to the large number of losses sustained in South Carolina on policies of similar nature to that issued

to the plaintiff and referred to as Form No. 24 it became necessary for the defendant to terminate and cancel said policies in accordance with the provisions thereof, and that the defendant, exercising the right under the terms of Policy No. 709577 (Policy No. 24), terminated said policy contract. At the same time, however, this defendant gave to the plaintiff the right to apply for a new policy which was issued to him on receipt of his written application, and which policy the defendant would have kept in full force and effect had not the plaintiff notified defendant to cancel the same.

"That the plaintiff has sustained no damages whatsoever, having filed no claim with this defendant under the terms of the provisions of either of the policies for any loss thereunder."

It was admitted by respondent that, had the policy remained in full force and effect until the date of the commencement of this action, October 7, 1933, he would not have been entitled to collect any benefits thereunder.

As all exceptions are directed to the refusal of the trial Judge to direct a verdict for appellant, we necessarily consider all testimony and the inferences to be drawn therefrom most favorable to the respondent.

It must be borne in mind that this is not an action based upon a demand for compensation under the terms of the contract of insurance as embodied in Policy No. 24, but is an action based on fraud; the fraudulent procuring from plaintiff of possession of Policy No. 24, the fraudulent cancellation of Policy No. 24, the fraudulent sale or substitution of Policy No. 20, and the retention of premiums after refusing to return Policy No. 24, and, on the other hand, canceling same without the required notice.

The case at bar is somewhat similar in facts to that of *Kelly v. Guaranty Fire Ins. Co.,* 176 S. C., 275, 180 S. E., 35, 36. The insurance company had a policy of fire insurance on property of Mrs. Kelly, which policy provided for cancellation, and the procedure for so doing. During the term

of the insurance, the insurance company, desiring to be relieved of the risk, instructed its agent to take up the policy. The local agent and a special agent of the insurance company went to the home of Mrs. Kelly, informed her the company desired the policy taken up, and obtained possession of the policy by assuring her that within a few days another policy to take its place would be furnished her. No other policy was furnished her nor was the premium for the unexpired term of the policy obtained from her returned. By giving a stipulated notice and returning the unearned premium, the insurance company had the right to cancel the policy.

None of the insured property was damaged by fire.

Mrs. Kelly brought an action against the insurance company for actual and punitive damages, alleging that the agent of the company had fraudulently invaded her rights under the policy in question in failing to furnish another policy or return the unearned portion of the premium. Upon judgment for Mrs. Kelly, the case came to this Court on several exceptions, but the Court considered only one, pertaining to the charge of the trial Judge, and, having sustained this exception, sent the case back for a new trial. The question presented, and on which this Court reversed the trial Court, is stated as follows: "Was it proper for the Court to charge the jury that if the respondent was improperly induced to surrender the policy the liability of the appellant upon the policy ceased to exist as a matter of law?"

In reversing the trial Court, this Court cited as authority *Hamilton Ridge Lumber Corp. v. Boston Insurance Co.,* 133 S. C., 472, 131 S. E., 22; *Herndon v. Continental Casualty Co.,* 144 S. C., 448, 142 S. E., 648; and *Hollings v. Banker's Union,* 63 S. C., 192, 41 S. E., 90.

We have gone into the ground upon which the *Kelley case* was reversed, in view of appellant's fourth exception. After reaching the conclusion that the *Kelley case* should be reversed by reason of the error of law committed by the trial Judge in his charge to the jury, there followed this

statement: "On the record here there was sufficient evidence to submit the case to the jury as to both actual and punitive damages, but, since the case must go back for a new trial, it would serve no useful purpose to discuss the exceptions of the appellant in that regard."

The appellant in the case under consideration had a perfect legal course chartered for a cancellation of Policy No. 24, and, if it chose for any reason to travel another route, then it must suffer the consequences. It cannot, under the testimony, bring itself within the holding in the case of *Jordon v. Equitable Life Assur. Soc.,* 170 S. C., 19, 169 S. E., 673.

In our opinion, there was ample testimony of a fraudulent scheme to obtain a cancellation of Policy No. 24, and a fraudulent cancellation, requiring the trial Court to submit the case to the jury both as to actual and punitive damages.

No exception is taken relating to the amount of damages awarded plaintiff by the jury.

All exceptions have been considered and are overruled.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE concur.