15768

### HARWELL v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION

(35 S. E. (2d), 160)

*Messrs. Thomas, Cain & Black,* of Columbia, S. C., and *G. Badger Baker,* of Florence, S. C., Counsel for Appellant,

*Messrs. McEachin & Townsend,* of Florence, S. C., Counsel for Respondent,

August 17, 1945.

MR. ASSOCIATE JUSTICE. FISHBURNE. delivered the Opinion of the Court.

This action was brought for the recovery of damages for the alleged wrongful and fraudulent refusal of appellant to accept a renewal premium on an accident insurance policy issued and delivered by it to the respondent. It is alleged that such conduct on the part of the appellant was part of a scheme or design to defraud respondent in his rights under the policy. The trial of the case resulted in a verdict and judgment against appellant in the sum of $46.50, actual damages, and $1,250.00, punitive damages. From this judgment the appeal is taken.

The insurance policy in question is styled "Special Automobile Accident Policy", and was issued by appellant. Mutual Benefit Health and Accident Association, to the insured, who is respondent herein, on March 5, 1934. It was terminated by the appellant on May 1, 1943, by its refusal to accept further annual premium payments.

The main contention of appellant is that the trial Court erred in holding that the policy was terminated without lawful authority, whereas it should have held that the appellant had the right under the terms of its policy to decline to accept such renewal premium; and erred in refusing to grant appellant's motions for a nonsuit and for a directed verdict.

Under the policy, the insurance coverage is confined exclusively to injury or loss of life arising out of automobile accidents; and the contention of respondent is that the pro-

visions of the policy are so ambiguous, and so equivocally expressed that it should not be construed as term insurance, but as a continuous non-cancellable contract.

At the top of Page 1 of the Policy, this promise is held forth:

"Death Benefit Without Increase ..........$1,000.00

"Death Benefit With Full Increase ........ 2,000.00"

The figures are printed in heavy black type so as not to escape attention.

On the bottom of Page 1, under Part B, the policy provides:

"Annual Increase One Hundred Dollars Per Year. After the first year's premium has been paid, each year's renewal premium paid in advance on this policy shall add One Hundred Dollars to the death benefit until the same amounts to Two Thousand ($2,000.00) Dollars."

There is nothing on the first page of the policy, in big print or small type, to put the insured upon notice that the insurance company reserved any right to refuse the acceptance of any renewal premium. Following the above-quoted portion of the policy, on the second page, provision is made for double death benefit, total accident disability, partial accident disability, medical attendance, financial aid if injured on automobile trip, special coverage, and additional benefits if confined to hospital. These various clauses are followed by the policy's standard provisions. This is all that appears on Page 2.

It is not until Page 3 is reached, at the end of the policy, under the casual heading, "Additional Provisions", do we find any suggestion that the acceptance of an annual renewal premium shall be optional with the Association. Under this heading, in fine type, it is provided, in Section (c):

"The copy of the application endorsed hereon is hereby made a part of this contract and this policy is issued in consideration of the statements made by the Insured in the application and the payment in advance of Six Dollars and Fifty Cents ($6.50) the first year; and the payments in advance of Five ($5.00) Dollars annually thereafter, beginning with March 1, 1935, is required to keep this policy in *continuous* effect. If such dues be unpaid, at the office of the Association in Omaha, Nebraska, this policy shall terminate on the day such payment is due. The mailing of notice to the Insured at least fifteen days prior to the date they are due shall constitute legal notice of dues." (Emphasis added.)

At no point in the foregoing provision is there any intimation that appellant reserves any right to refuse the acceptance of a premium. An ambiguous reservation of this kind appears for the first time in small type as a second paragraph in Section (c). It reads as follows:

"The acceptance of any renewal premium on this policy shall be optional with the Association, and should the premium provided for herein be insufficient to meet the requirements of the Association it may call for the difference as required."

It is further provided, in Section (d):

"The term of this policy begins at 12 o'clock noon, Standard Time, on date of delivery to and acceptance by the Insured and ends at 12 o'clock noon on date any renewal is due."

Appellant takes the position that the insurance involved here was term insurance only, for the term for which the premium was paid in advance; that acceptance of any renewal premium was optional with the Association; and that it rightfully exercised this option and rejected the premium tendered after May 1, 1943.

Respondent contends that the quoted provisions of the policy worked such a change in the insurance, by reason of their equivocal and inconsistent terms, that it ceased to be term insurance, and became in effect assimilated to lifetime insurance, terminable like life insurance only upon failure to pay the premiums as they fell due. The trial Court, in a well-reasoned order, overruled a motion *non obstante veredicto,* or in alternative, for a new trial, and adopted the view of the respondent. After a careful examination of the policy provisions, we reach the same conclusion.

It is true that the policy does provide, in fine print at its end, that the acceptance of any renewal premium shall be optional with the Association, but too much has gone before which, to our mind, conflicts with this provision, and conflicts to such an extent as to justify the construction that the policy was a continuous, non-cancellable contract.

It appears to us that the optional clause itself is not free from ambiguity. After providing that the acceptance of any renewal premium shall be optional, it continues in the same sentence, "and should the premium provided for herein be insufficient to meet the requirements of the Association it may call for the difference as required." This clause can reasonably be construed to mean, as contended by respondent, that the Association could refuse the five dollar premium and demand an adjusted premium based upon its needs. In the light of the contradictory provisions of the policy, this is one of the meanings which may be assigned to the optional clause so as to keep the insurance in "continuous effect", and effectuate the intention of the parties.

The trial Court, discussing the provisions relating to the annual cumulative benefits under Part B, soundly reasoned as follows:

"This provision is made conspicuous by its designation as one of the major portions of the policy, and by its prominence on Page 1 with the above-quoted heading in heavy black type. The prominence of the clause is made even more striking by the following stipulation at the top of Page 1, in which the figures are emphasized in very large type:

" 'Death Benefit Without Increase . . . . . . . . . .$1,000.00

" 'Death Benefit with Increase . . . . . . . . . . . . 2,000.00'

"Two points, I think, are significant in connection with this portion of the policy. The annual increase in death benefits was in the first place, at the inception of the contract, held out to the insured by the defendant as an inducement to not only purchase the insurance, but more particularly as an incentive to maintain it in force over a period of years. It is also noteworthy that if it were the intention of the defendant to invoke the absolute right now claimed by it to reject annual renewal premiums, that right could have been made manifest by the insertion following the words 'paid in advance' of the words 'and accepted by the Association.' The language of Part B as it stands may be fairly construed as showing the intention on the part of the defendant of conferring upon the insured the right to maintain the insurance in continuous effect for the specific purpose of increasing the death benefit protection from year to year. In this connection it is of more than passing interest that the insured in this case, over a period of seven years by successive annual renewals, had increased the death benefit value of the policy from One Thousand ($1,000.00) Dollars to One Thousand Seven Hundred ($1,700.00) Dollars."

We recognize, of course, the general rule that the ordinary insurance policy covering accident is generally regarded as a species of term insurance, not renewable except with the consent of the insurer. But this formula is not so rigid that it may not undergo modification when the particular pro-

visions of a policy require it. The policy contract in the case at bar must be considered as being of a dual nature, having incongruous elements in its composition. It is not only so phrased as to be deemed term insurance, but it reaches further and is susceptible of the construction that it is continuous insurance, provided only that the premiums be paid.

Policies carrying substantially the same optional clause, reserving the right to refuse the acceptance of premiums, have been up for construction in quite a number of other jurisdictions. *Mutual Benefit Health & Accident Ass'n v. Caver,* 169 Miss., 554, 152 So., 897; *Massachusetts Bonding & Ins. Co. v. McConnel,* 50 Ga. App., 87, 176 S. E., 911; *Davis v. Mutual Ben. Health & Accident Ass'n,* 168 Okl., 514, 34 P. (2d), 579. See Annotation, 119 A. L. R., 530.

In the foregoing case, it was held to be not entirely inconsistent with the terms of the policy to give the insurance company the option to refuse any premium. However, the policies in these cases carried no provision, as does the policy in this case, for cumulative benefits.

It seems to us only fair that an insurer acting in good faith should insert in a conspicuous place in a policy an express unequivocal provision with respect to the right of renewal, especially where, as in this case, no provision is made for the cancellation of the policy.

Our attention has been directed to two cases in which courts of other jurisdictions have passed upon policies containing practically the same provisions as the one now before us, and including the provision promising that the benefits shall be progressively increased upon the payment of successive annual premiums. *Prescott v. Mutual Benefit Health & Accident Ass'n,* 133 Fla., 510, 183 So., 311, 119 A. L. R., 525; and *Mutual Ben. Health & Accident Ass'n v. Lyon,* 8 Cir., 95 F. (2d), 528, 532.

In the *Prescott case*, after quoting the various pertinent provisions of the policy, the Court held that it was not an unconditionally continuing contract, but was a contract for a stated term, renewable for additional stated premiums, on conditions named in the policy. It gives paramount importance to that provision of the policy which reserves the right of the insurance company to reject the renewal premium. But we find practically no discussion as to whether the policy involved, by reason of the provision relating to cumulative benefits, was ambiguous or conflicting. Apparently, the disposition of the case rested upon the meaning and effect to be given the word "acceptance", as used in the optional clause of the policy.

In the second case above noted (*Mutual Ben. Health & Accident Ass'n v. Lyon*), the Court held that it was not persuaded that the promise to make the additions to the benefits in case of accident if the policy should be continued, changed the nature of the insurance; and held that the declaration of clause (c) of the policy, " 'the acceptance of any premium on this policy shall be optional with the association.' is equally unequivocal (notwithstanding other provisions found in the same clause)." The Court also noted, apparently as supporting these conclusions, that the increases in the amounts promised by the policy did not apply to the numerous other hazards covered, but only to loss by accidental death. And it was further stated that it was not contended that the increase would cause the insurance to become unprofitable to the Association or that there was any fraud in the transaction. The foregoing case was appealed to the Supreme Court of the United States (*Lyon v. Mutual Ben. Health & Accident Ass'n*, 305 U. S., 484, 59 S. Ct., 297, 83 L. Ed., 303), where it was reversed upon other grounds. The Court refused to decide the question whether the insurer had the right to terminate the policy under the provision—"the acceptance of any premium on this policy

shall be optional with the association * * *." Although persuasive, we are not disposed to accept the conclusions reached in the above-mentioned cases.

The terms of an insurance policy should be construed most liberally in favor of the insured, and in case of conflict or ambiguity, a construction will not be adopted that will defeat recovery if the policy is susceptible of a meaning that will permit recovery. Insurance companies frame their own policies, use their own language, except when compelled by the legislature to use a standard policy; insert their own complicated, and in some instances obscure and equivocal, conditions; and courts uniformly give the insured the benefit of any doubt in the construction of the terms used in such policy. *Walker v. Commercial Casualty Ins. Co.,* 191 S. C., 187, 4 S. E. (2d), 248; *Prosser v. Carolina Mut. Ben. Corporation,* 179 S. C., 138, 183 S. E., 710; *Parker v. Jefferson Standard Life Ins. Co.,* 158 S. C., 394, 155 S. E., 617; *Jennings v. Clover Leaf Life & Casualty Co.,* 146 S. C., 41, 143 S. E., 668.

As was said in *American Indemnity Co. v. Mexia Independent School Dist.,* Tex. Civ. App., 47 S. W. (2d), 682, 685: "Insurance companies cannot thus couch their contracts in doubtful language and allow their salesmen to employ the construction most favorable to the insured to catch the unwary, and then, when the company is haled into court, claim the benefit of the construction most favorable to it."

In our own case of *Schultz v. Benefit Ass'n of Railway Employees of Chicago,* 175 S. C., 182, 178 S. E., 867, the policy in question (health and accident) was designated in large type as "Non-Cancellable". It was held under the peculiar facts of that case that the evidence was sufficient to sustain a verdict in favor of the insured in an action for damages for wrongful refusal of the insurer to accept any

further premiums on the policy; although, among the miscellaneous provisions in the policy, written in small type, the insurer was given the right to refuse to accept premiums for any renewal period.

In our opinion, the provisions of the policy here are inconsistent, and produce an ambiguity which renders applicable the rule that equivocal or doubtful language in the terms of a policy must be given the strongest interpretation against the insurer which they will reasonably bear. It follows that we find no error in the trial court's judgment on this issue to the effect that the contract was a continuing one so long as the insured paid the premiums as they became due.

We next consider whether the Court erred in refusing to withdraw the issue of punitive damages from the jury. Appellant contends that there was no proof either of fraudulent intention or fraudulent act in connection with the breach—even assuming that the appellant had no right to decline the renewal premium.

As shown by the application attached to the policy, the insured was a banker and obtained the policy in question in 1934. His testimony, which is not contradicted, shows that from the date of the issuance of the policy, the Association established the custom of mailing him a notice fifteen to twenty days prior to the due date of the annual premium. In addition to this, the Association's local agent would invariably call at the insured's place of business and receive and receipt for the annual payment. It appears that Mr. Dabney, the local agent, withdrew from the employment of the Association some time prior to May 1, 1943, on which date the annual payment fell due, and the appellant failed and neglected to mail the insured any notice to remind him of the due date. The matter escaped the attention of the insured until June 12th, when upon looking through his policies, he dis-

covered that the premium had not been remitted, due to the omission of the local agent to call for it, and to the fact that he had received no notice. He promptly called Mr. Dabney (he did not know Dabney had left the employ of the company), and as a result of their conversation he sent a check for the premium payment direct to the company on June 12th, together with a letter explaining the circumstances accountable for the delay, and advising the appellant that he would thereafter mail premiums promptly direct to their office in Omaha, Nebraska. The company refused to accept the premium payment, and replied to the insured as follows, on June 21, 1943:

"Here is your check for $5.00 which you recently tendered in payment of the premium on your policy 5-32 688.

"You have our assurance that if at any time in the future we design a form of coverage suitable to your needs, we will have one of our local representatives contact you at your present address."

Appellant alleges in its answer, which is supported by the evidence, that even had the plaintiff tendered his premium on May 1, 1943, it would, acting pursuant to the optional clause, have declined to accept the same. It also appears from the testimony offered by appellant, that after the action was commenced, it offered to reinstate the policy upon payment of the annual premium.

Respondent points to the following circumstances as showing a fraudulent intent on the part of the appellant in breaching the contract: (a) By so wording its contract as to deceive the insured into purchasing what appellant now claims is, at its option, not a continuous policy, although, from its major provisions, it appears to be a continuous contract with cumulative benefits; (b) cancelling the policy only after the accumulated benefits had nearly reached their max-

imum; (c) after its local agent had withdrawn from its employment, appellant deliberately failed to notify the insured that it would no longer have an agent to collect its premiums; (d) establishing a custom over a long period of time of collecting the annual premium by its agent, then suddenly and without warning breaking the custom; (e) failing to send the plaintiff notice (as was its practice) of the due date of the annual premium; (f) refusing the plaintiff's renewal premium after having maneuvered him into default and continuing to refuse to reinstate the policy until this action had been instituted.

The last sentence in Section (c), under "Additional Provisions", provides, "The mailing of notice to the insured at least 15 days prior to the date they (premiums) are due shall constitute legal notice of dues."

The trial Court held that the mailing of notice under this provision was not mandatory. But, even so, we think it has a bearing upon the charge of fraud when, having been commenced and continued for a long period, the custom was suddenly stopped, and no notice was mailed to the insured immediately prior to May 1, 1943, when the premium fell due. *Jamison v. American Workmen Ins. Co.,* 169 S. C., 400, 169 S. E., 83; *Schultz v. Benefit Ass'n of Railway Employees of Chicago,* 175 S. C., 182, 178 S. E., 867.

We also consider as an element supporting the charge of fraud in some measure, the peculiarly evasive and obscure phraseology of the letter from appellant to the insured of June 21st, above quoted.

The established rule in this state is that punitive damages are not recoverable for a mere breach of contract. To recover damages of that character, the plaintiff must show that the breach was accomplished with fraudulent intention, and was accompanied by a fraudulent act. *Calder v. Commercial Cas-*

*ualty Ins. Co.,* 182 S. C., 240, 188 S. E., 864, and cases cited therein.

After careful examination of the record, in the light of previous decisions, we are unable to conclude as a matter of law that the evidence in the case excludes all reasonable inference of fraud. *Bradley v. Washington Fidelity Nat. Ins. Co.,* 170 S. C., 509, 171 S. E., 243; *Mack v. Life & Casualty Ins. Co. of Tennessee,* 171 S. C., 350, 172 S. E., 305.

Nor are we persuaded that the trial Court erred in refusing to order a mistrial, the motion being based upon the following incident: When the plaintiff was testifying, he was asked by his attorney whether he had been offered a reinstatement of his policy, which offer had been alleged in the answer of the appellant. He replied: "I have never seen anybody from that company. A fellow, Dobbs, came over here from Atlanta, and offered to settle with me."

Timely objection was made on behalf of the appellant, the jury was excluded, and the motion for mistrial followed, based upon the ground that any testimony with reference to a settlement was not only inadmissible, but so prejudicial as to make a new trial necessary.

In answering the question, the plaintiff was a volunteer, as his answer was in no sense responsive to the question asked.

The trial judge reserved his ruling until the next morning. He agreed with counsel for appellant the day before, when the motion was made, that the volunteered statement was prejudicial, but evidently upon reflection, decided that the matter could be cured by a proper instruction to the jury, and overruled the motion. When the jury was recalled, the Court fully instructed them that the statement with reference to the offer of settlement in the testimony of plaintiff was irrelevant, and had no place in the case; had nothing to do with any of the issues involved in the case, and that it was

improper and should not have been made. He told the jury to completely disregard the statement.

We think any prejudice to the defendant was eliminated by the foregoing emphatic statement of the trial court to the jury. *Neal v. Clark,* 199 S. C., 316, 19 S. E. (2d), 473. The ordering of a mistrial as a general rule is left to the sound discretion of the trial judge. *James v. Atlantic Coast Line R. Co.,* 199 S. C., 45, 18 S. E. (2d), 616; *Neal v. Southern Ry., Carolina Division,* 162 S. C., 288, 160 S. E., 837.

In addition to this, we think the prejudice, if any, was neutralized by the pleading and evidence of the defendant that despite its refusal to accept the premium prior to the action, it had, subsequent to the bringing of the action, offered to reinstate the policy upon payment of the annual premium. The average jury is not apt to make any worthwhile distinction between an offer of settlement and an offer to reinstate.

Finally, it is urged that the verdict of punitive damages was so excessive that the trial court should have granted a new trial. Punitive damages in cases of this kind bear no particular ratio to actual damages, and while the verdict is large, it is not out of line with verdicts sustained by this court in cases involving similar issues. *Riley v. Life & Casualty Ins. Co. of Tennessee,* 184 S. C., 383, 192 S. E., 394; *Smith v. Benefit Ass'n Railway Employees,* 178 S. C., 449, 183 S. E., 318; *Barber v. Industrial Life & Health Ins. Co.,* 189 S. C., 108, 200 S. E., 102; *Sturkie v. Commonwealth Life Ins. Co. of Louisville, Ky.,* 180 S. C., 177, 185 S. E., 541.

Judgment is affirmed as to actual damages and should be affirmed as to punitive damages.

Mr. Associate Justice Stukes concurs.

Mr. Chief Justice Baker and Messrs. Associate Justices Taylor and Oxner concur in part and dissent in part.

Mr. Chief Justice Baker (dissenting) :

I respectfully dissent to that portion of the opinion of Mr. Justice Fishburne which finds no error on the part of the trial Judge in submitting to the jury the issue of punitive damages.

Mr. Justice Fishburne, in my judgment, correctly construes the insurance policy in question, notwithstanding considerable authority to the contrary, and hence the verdict for actual damages was warranted, but I do not think there was any evidence in the record which justified the submission of the issue of punitive damages to the jury; for if the verdict should stand the appellant company would be penalized or punished rather severely for the assertion of what it evidently bona fide believed to be its legal rights based upon the contract of insurance wherein it is plainly stated, "The acceptance of any renewal premium on this policy shall be optional with the Association, * * *," and upon the decisions of Courts of other jurisdictions commanding the highest respect.

Copy-modeling from the case of *Prescott v. Mutual Benefit Health & Accident Ass'n* (the identical defendant in the present case), 183 So., 311, 119 A. L. R., 525, it must be borne in mind that the matter of fraudulent cancellation of a policy, accompanied by a fraudulent act, is not involved in this suit. The matter here is whether or not the insurer (appellant) acted fraudulently in declining to renew the policy at the end of a premium-payment period.

It should further be borne in mind that there was only a remote contingency that any liability would ever occur under the policy, which insured "against loss of life, limb, sight or time, resulting directly and independently of all

other causes, from bodily injuries sustained by the Insured through purely Accidental Means, (a) as a result of operating, driving, demonstrating, adjusting, riding in or on an automobile, or (b) as a result of being run down, struck or run over by an automobile, or (c) as a result of the burning or explosion of an automobile, * * *"; and that no claim had arisen thereunder between the date it was in force and the date the respondent was apprised that the appellant would not accept a renewal premium (nor even to the date of the trial, so far as the record discloses). Of course, if between these dates the respondent had suffered an accident compensable under the terms of the contract of insurance, the action of the appellant in refusing the renewal premium could be viewed in a very different light. Therefore, the fact that the appellant did not mail its usual notice of the due date of a yearly renewal premium, nor have an agent undertake to collect such renewal premium from the respondent, cannot be said to be any evidence that the appellant *fraudulently* failed to notify the respondent that a renewal premium was about to become due, or that it *fraudulently* failed to collect the renewal premium through an agent as had been its custom. Indeed, it would have been highly irregular to call to the attention of the respondent that a renewal premium was becoming due, and then refuse to accept same.

In overruling the motion for direction of verdict as to punitive damages in behalf of the appellant, the trial Judge stated: "It is a pretty close question, I realize that. It is about as slim evidence as you might have to submit the question of fraud on but I think there is something there." The trial Judge based this ruling on the fact that it was customary for an agent to collect the renewal premium, and his failure to do so, in connection with the later refusal of the appellant to accept the premium.

Of course it is obvious that the refusal of the appellant to accept the premium when tendered, as set forth in the opinion of Mr. Justice Fishburne, and when no liability under the policy had arisen in the interim, can in no wise affect the issue now under discussion. In other words, if the respondent had tendered the renewal premium prior to or on May 1, 1943, the renewal date, and the appellant had refused to accept same, the legal issue would be the same. The appellant did not refuse to accept the renewal premium because it was not tendered or paid prior to or on the date due, but because of its *bona fide* belief that it had a legal right to refuse to renew the policy under the terms of the contract of insurance and the construction which had been placed on this clause in its contract, and similar clauses in other insurance contracts, by the Courts of last resort in several States.

Upholding the right of this identical appellant, and other insurance companies having a similar clause in their contracts of insurance, to refuse renewal premiums on this class of term insurance, we find the following cases which we have read with persuasive interest: *Prescott v. Mutual Benefit Health & Accident Ass'n* (Fla.), 183 So., 311; *Davis v. Mutual Ben. Health & Accident Ass'n* (Okl.), 34 P. (2d), 579; *Mutual Ben. Health & Accident Ass'n v. Caver* (Miss.), 152 So., 897; *Smith v. Mutual Benefit Health & Accident Ass'n,* (D. C. Okl.), 10 F. Supp., 110; *Vicars v. Mutual Benefit Health & Accident Ass'n,* 259 Ky., 13, 81 S. W. (2d), 874; *Elliott v. Business Men's Assur. Co., Ohio,* 11 N. E. (2d), 203; *Washington Nat. Ins. Co. v. Phinizy* (Ga.), 175 S. E., 387. Citation of additional cases is unnecessary. We find no decisions holding contrary to the above-cited cases, and none has been called to our attention.

The fact that the clause in the contract of insurance making it optional with the appellant if it would accept a renewal premium is not printed on the first page of the policy of in-

surance, and the further fact that it is not printed in as large or bold type as some portions of the said first page, are apparently relied upon as evidence of fraud at the inception of the contract of insurance. It would not be feasible to print the entire contract on one page, and irrespective of which page of the contract this clause appears, it is still a part thereof; and is in no wise obscured.

The two cases particularly discussed in the opinion of Mr. Justice Fishburne, the *Prescott case,* a Florida case; and the *Lyon case,* a Federal case, are both strong and well-reasoned cases in favor of the view that the insurance company had the right to refuse to accept a renewal premium. He says with reference to the *Lyon case* that it is "persuasive", although the Court, in the proper exercise of independent judgment, is not disposed to accept its conclusions. Certainly our own case of *Schultz v. Benefit Ass'n Ry. Employees,* 175 S. C., 182, 178 S. E., 867, is quite different, for there the policy was clearly labelled "Non-cancellable."

In the absence of a prior decision by the Courts of this State construing a policy similar to that in question, it does not seem to me that the ends of justice would be subserved by holding that the insurance company is liable for and can be mulcted in punitive damages.

As Justice Woods well said in the case of *Ex Parte Hollman,* 79 S. C., 9, 15, 60 S. E., 19, 22, 21 L. R. A. (N. S.), 242, 14 Ann. Cas., 1105:

"Willful and unjust failure to perform a contract does not necessarily connote fraud. Bad faith is the test. One may wilfully or intentionally abandon a contract under a *bona fide* claim of right without being subject to the charge of fraud, though in fact the other party had not impaired his right to require performance."

And in the case of *Gwynn v. Citizens' Telephone Co.*, 69 S. C., 434, 48 S. E., 460, 67 L. R. A., 111, 104 Am. St., Rep., 819, it was held that an act based on the belief that it was legal and done for the sole purpose of protecting actor's right, would not subject the actor to vindictive or punitive damages. Even in a case of willful trespass or other willful tort, if the same was committed under a *bona fide* claim of legal right, although a mistaken claim, no punitive damages can be recovered. See *Walker v. Glenn*, 124 S. C., 501, 117 S. E., 723.

A similar principle is that punitive damages are not recoverable where a defendant in good faith acts under the advice of counsel. The rule is thus stated in 15 Am. Jur., 726. "Exemplary damages are not recoverable against a defendant who acts in good faith and under the advice of counsel."

If the respondent really desired this policy of insurance, instead of suing for damages, he had the alternate remedy of going into a court of equity to have it declared that he was entitled to a continuation of the policy, and under the opinion of Mr. Justice Fishburne affirming the judgment for actual damages, the respondent would have been entitled to this relief.

The trial Judge correctly charged the jury: "If you find the policy was wrongfully cancelled by the defendant, under a simple mistake or under a misapprehension as to the plaintiff's rights, the defendant would be liable for the actual damages that the plaintiff suffered but for no further damages than that." However, when under the facts of this case and the contract of insurance he also submitted to the jury the issue of punitive damages, it is my opinion that he committed error.

The judgment of the lower ·Court is reversed as to punitive damages, and the case remanded for entry of judgment in favor of the appellant as to such damages.

MESSRS. ASSOCIATE JUSTICES TAYLOR and OXNER concur.