George L. WILLIAMS, Appellee,

v.

MUTUAL OF OMAHA, Appellant.

No. 8352.

United States Court of Appeals
Fourth Circuit.

Argued June 22, 1961.

Decided Jan. 5, 1962.

Hoover C. Blanton, Columbia, S. C. (Whaley & McCutchen, and Thomas B. Whaley, Columbia, S. C., on brief), for appellant.

Kale R. Alexander, Columbia, S. C. (Alex Lazzarino, Columbia, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

Upon a claim of a fraudulent breach of a contract of health and accident insurance, judgment was entered in the District Court requiring the insurance company to pay to the plaintiff $12,000 actual damages and $3,000 punitive damages. Its motions for the direction of a verdict in its favor, and for judgment notwithstanding the verdict, were denied. We conclude that the denial of these motions was improper.

In 1928, the insurance company issued to the plaintiff, Williams, then a resident of Florida, a health and accident insurance policy.[1] The plaintiff chose to pay premiums on a quarterly basis, and he regularly paid a quarterly premium of $17 until April 1959. The premium due on the first day of that month was not paid. Meanwhile, the plaintiff had moved from Florida to Columbia, South Carolina.

In a letter dated July 20, 1959, the plaintiff wrote to the insurance company's South Carolina collecting agency that he had not received notice of the April premium until that day, that he had been very busy and the matter had slipped his mind. He asked that arrangements be made under which he would be permitted to continue this insurance. He enclosed two checks, each dated July 22, 1959, and each in the sum of $17, for the premiums due on the first of April and the first of July. There was subsequent correspondence between the plaintiff and officials in the home office of the insurance company. The insurance company declined to accept the tendered premiums, but offered the plaintiff a different form of policy providing different benefits, which the plaintiff declined, writing that he had obtained insurance from another reputable company providing greater benefits for a lower premium. He then commenced this action, alleging that he had failed to pay the April premium when due because he had not received the notice of that premium until July, and that he had relied upon the company's continued practice of sending him notice of premiums due approximately two weeks prior to the due date.[2]

1. For loss of life and certain specific bodily injuries suffered by the insured through accidental means, the policy provided a maximum benefit of $5,000. For total disability resulting from an accident, but not occasioning any of the specifically listed injuries, the policy required the insurance company to pay to the plaintiff $200 a month during the continuance of the total disability. These benefits were to be doubled if the accident occurred

while the insured was riding as a passenger in a railway car operated by a common carrier. In addition, there was a sickness benefit of $200 a month if the insured suffered from a disease occasioning total disability and total loss of time.

2. In the light of our conclusion under the laws of Florida, which govern here, that acceptance of the premium was optional with the insurance company, we need not

The form of this health and accident insurance policy is a common one. It purports to provide coverage during a stated term[3] commencing at 12:00 o'clock noon on the date the insured accepts delivery of the policy as to the accident coverage, and on the 31st day thereafter as to disease coverage, and ending at 12:00 o'clock noon on the date any renewal becomes due. It specifically provides "the acceptance of any premium on this policy shall be optional with the Association * * *."[4] It extends the stated coverage during a succession of terms of specified duration, provided that the insured pays, and the Association accepts, the specified premium for each of the renewal terms. If the insured does not remit the specified premium, or if he remits, but the Association declines to accept it, the coverage provided comes to an end with the expiration of the current term. The policy has no cash or surrender values, and nothing in the nature of increasing protection[5] which would be forfeited upon a termination of the coverages.

The District Court found some inconsistency between the provision that payment of premiums in advance "is required to keep this policy in continuous effect" and the provision that the acceptance of any premium is optional with the company. Both of these provisions are contained in paragraph (c) of the Additional Provisions quoted in footnote 4 above, and we find no inconsistency

consider whether the evidence was sufficient to support the jury's finding that the notice was not mailed in March 1959. There was positive testimony that the notice which was received by the plaintiff, though, he claims, not until July, and which was introduced in evidence, was prepared in Omaha in early March 1959, the 47th of some five thousand such notices addressed to policyholders in South Carolina, and that all of such notices were placed in window envelopes, which were sealed, stamped and routinely mailed on March 16, 1959. The notice was properly addressed to the plaintiff at his residence and was received by him there. The plaintiff did not retain the envelope in which the notice had been received, so the record does not disclose what postmarks the envelope bore. When testifying in his behalf at the trial, the plaintiff disclaimed any intention of suggesting that the notice was not properly mailed to him. He suggested as a reason for its late receipt by him that there were many people with the same name residing in Columbia, South Carolina, and that mail intended for one George Williams was frequently misdelivered to another George Williams.

The policy provided, "the mailing of notice to the Insured at least fifteen days prior to the date they are due shall constitute legal notice of dues." The factual question, therefore, was not whether plaintiff's receipt of the notice was delayed, as he testified, and for which he offered some explanation, but whether the notice was mailed in Omaha, Nebraska, on March 16, 1959.

3.    "Additional Provisions
" * * * (d) The term of this policy begins at 12 o'clock noon, Standard Time, on date of delivery to and acceptance by the Insured, against accident and on the thirty-first day thereafter against disease and ends at 12 o'clock noon on date any renewal is due."
There are repeated references elsewhere to the terms of the policy.

4.    "Additional Provisions
" * * * (c) The copy of the application endorsed hereon is hereby made a part of this contract and this policy is issued in consideration of the statements made by the Insured in the application and the payment in advance of Twenty-seven ($27.00) Dollars as first payment; and the payment in advance of premiums of Seventeen ($17.00) Dollars quarterly or Sixty-eight ($68.00) Dollars annually thereafter, beginning with April 1, 1929, is required to keep this policy in continuous effect. If any such dues be unpaid at the office of the Association in Omaha, Nebraska, this policy shall terminate on the day such payment is due. The mailing of notice to the Insured at least fifteen days prior to the date they are due shall constitute legal notice of dues.
"The acceptance of any premium on this policy shall be optional with the Association, and should the premium provided for herein be insufficient to meet the requirements of the Association, it may call for the difference as required."

5.   Cf. Harwell v. Mutual Ben. Health & Accident Ass'n., 207 S.C. 150, 35 S.E.2d 160, 161 A.L.R. 183.

between them. The statement that the payment of premiums in advance is required to keep the policy in effect is not a representation by the company that there is no other requirement, nor is it a promissory undertaking that it will not exercise its reserved option to decline to accept any premium tendered. The one is an affirmative statement, by the company, that the policy will lapse and its coverages terminate if the stipulated premium is not paid in advance, while the other is an affirmative statement of the company's right to cancel at the expiration of any term by declining to accept a renewal premium. The two statements in the same numbered paragraph can be read together harmoniously. Each may be given effect, and no ambiguity arises for application of the principle of strict construction against the insurer, the author of the contract.

Attached to the contract is a rider entitled "Non-Cancellable Endorsement," which provides that the Association cannot cancel the policy during any period for which the premium has been paid, nor during any period of disability of the insured.[6] Plainly, this endorsement deprives the company of any right it otherwise may have had to cancel the insurance during a period for which a premium has been paid, and it makes it certain that the insurer will not exercise its option to decline to accept premiums,[7] so as to restrict or avoid its obligation under its insuring clauses with respect to death, injury or disability resulting from accident or disease suffered during a period of coverage. There is nothing in the language of the endorsement to suggest that the policy will be forever renewable at the option of the insured, or which restricts the right of the insurer to decline the acceptance of a renewal premium when the insured is in good health.

Many of the earlier health and accident insurance policies contained provisions giving the insurer the option to decline to accept a renewal premium and reserving to it the additional right to cancel the coverages during a term for which a premium had been paid.[8] The rider here effectively relinquishes the right of cancellation during a term, but does not impair the right to decline to accept a renewal premium for an additional term.

Similar contracts have been considered by many courts. Since the decisions are not entirely harmonious, we must first determine whether we are governed by the laws of Florida, where the contract was made, or by the laws of South Carolina, where the action was commenced. To resolve the conflict of laws question, we look to the decisions of the Supreme Court of South Carolina, for if the action had been tried in the courts of that state, the law of the forum would govern the resolution of the conflicts question.

The Supreme Court of South Carolina has dealt with this question on a number of occasions where an insured had moved to South Carolina from another state in which he had accepted delivery of an insurance policy. That court has uniformly held that the *lex loci contractu,* not the law of the forum, governs the construction and interpretation of the insurance policy.[9] We look, there-

---

6. The rider is in the following language:
"NON-CANCELLABLE ENDORSEMENT
"The Association cannot cancel this policy during any period for which the premium has been paid.
"It is further understood and agreed that this policy cannot be cancelled by the Association during any period of disability of the Insured."

7. Another rider provides for waiver of premiums during periods of disability.

8. See Appleman, Insurance Law and Practice, Vol. 3, Sec. 1817, pp. 434–437, fn. 63 (1941); National Life & Accident Ins. Co. v. Chastain, 46 Ga.App. 842, 169 S.E. 380; American Nat. Ins. Co. v. Ball, Tex.Civ.App., 218 S.W. 71; Perkins v. Associated Indemnity Corp., 189 Wash. 8, 63 P.2d 499.

9. Barkley v. International Mutual Insurance Co., Inc., 227 S.C. 38, 86 S.E.2d 602; Jones v. Prudential Insurance Company, 210 S.C. 264, 42 S.E.2d 331;

fore, to the decisions of Florida's courts for guidance in answering the substantive question.

In Prescott v. Mutual Ben. Health & Accident Ass'n, 133 Fla. 510, 183 So. 311, 119 A.L.R. 525, the Supreme Court of Florida considered a comparable policy issued by this same insurer. In that case, it appears that the policy provided that "the payment in advance, and acceptance by the Association of Premiums * * * is required to keep this policy in continuous effect." The Florida Supreme Court found no inconsistency and no ambiguity in the requirement that the insured pay premiums in advance and in the provision for their acceptance by the insurer. The use of the words "and acceptance," the court held, gave the company the plain right to decline to receive a renewal premium and to extend the coverages of the policy into an additional term. The policy which the court considered in Prescott did not have a provision that the insurer could not cancel during a term for which a premium had been paid, but it bore on its face in bold, large letters the words, "TEN YEAR INCREASING POLICY," and the policy provided that, with the payment of each year's renewal premium, $250 would be added to the principal amount of the death benefit until that benefit reached a stated maximum in the tenth year. It

was the kind of provision which the Supreme Court of South Carolina construed as a representation of a continuing right, each year's premium being, in part, a payment for additional coverage to be extended in future years.[10] Such a provision furnishes more foundation for a conclusion of inconsistency or ambiguity than the plain words of the rider here, by which the insurer relinquished the right to cancel during any period for which the premium had been paid.

■ The court which held in Prescott that the policy there was unambiguous and that the insurer had the right to decline acceptance of a renewal premium, applying the same principles here would come to the same conclusion. Use of the word "acceptance" was held in Prescott to express inferentially a reserved option to the insurer to decline to accept a premium for a renewal term. Here, the option is affirmatively expressed in language which can be regarded as no less clear than that considered by the court in Prescott. Similar policies have been frequently held to be clearly term policies, the renewal of which is optional with either party, and this result is reached whether the reserved option of acceptance of any renewal premium is expressed as it was in Prescott, or in the no less unambiguous form with which we are concerned here.[11]

Cantey v. Philadelphia Life Ins. Co., 166 S.C. 181, 164 S.E. 609.

10. Harwell v. Mutual Ben. Health & Accident Ass'n, 207 S.C. 150, 35 S.E.2d 160.

11. Mutual Benefit Health & Accident Ins. Co. v. Kennedy, 5 Cir., 140 F.2d 24 (applying the law of Florida); Rabb v. Mutual Benefit Health & Accident Ass'n., 98 Ga.App. 193, 105 S.E.2d 396 (where the option to accept any premium was reserved in the language of the policy here and there was attached a "Non-Cancellable Endorsement" in the language of the rider attached to Williams' policy.) Mutual Benefit Health & Accident Association v. Cohen, 8 Cir., 194 F.2d 232; Mutual Benefit Health & Accident Ass'n. v. Lyon, 8 Cir., 95 F.2d 528, revd. on other grounds, 305 U.S. 484, 59 S.Ct. 297, 83 L.Ed. 303; Smith v. Mutual Benefit Health & Accident Ass'n., D.C.Okl.,

10 F.Supp. 110; Jordan v. Washington Nat. Ins. Co., 219 Ark. 530, 243 S.W. 2d 367; Massachusetts Bonding & Ins. Co. v. McConnel, 50 Ga.App. 87, 176 S.E. 911; Hall v. Provident Life & Accident Ins. Co., 48 Ga.App. 359, 172 S.E. 721; National Life & Accident Ins. Co. v. Chastain, 46 Ga.App. 842, 169 S.E. 380; Price v. Mutual Benefit Health and Accident Association, La.App., 114 So.2d 124; World Insurance Company v. Perry, 210 Md. 449, 124 A.2d 259; Mutual Benefit Health & Accident Ass'n. v. Caver, 169 Miss. 554, 152 So. 897; Ray v. Mutual Benefit Health & Accident Ass'n., Mo. App., 220 S.W.2d 622; Elliott v. Business Men's Assur. Co., 56 Ohio App. 541, 11 N.E.2d 203; Yett v. Oregon Surety & Casualty Co., 88 Or. 620, 172 P. 486, L.R.A.1918D, 1126; Benat v. Mutual Benefit Health and Accident Ass'n., 191 Pa.Super. 547, 159 A.2d 23; Chastain v.

The plaintiff presents an alternative argument that the contract was for a stated term and that payment and acceptance of each renewal premium gave rise to a new contract for a further term. This leads him to the conclusion that after Williams moved to South Carolina the renewals were South Carolina contracts, the interpretation of which is governed by the laws of that state.

■ This argument is self-defeating It presupposes mutual freedom to contract, or to refuse to contract, for each renewal term. If there was a continuing promise by the insurer to extend the coverages into a succession of renewal terms, at the option of the insured, the promise was made in Florida when the contract was delivered.[12]

■■ The plaintiff next contends that the company did not purport to exercise a reserved right to reject a tendered renewal premium. It took the position that the policy lapsed because of nonpayment of the April premium and refused the plaintiff's request that the policy be reinstated. So it did, but it refused to accept the premiums tendered in July, a right it reserved to itself in the contract. Lapse was the assigned reason for the refusal, and lapse would justify the refusal without resort to the language of the policy. If the lapse be questioned, however, we still have a refusal of a tendered premium. It could exercise its reserved right to refuse tendered premiums with or without reason. When it assigned a reason for what it did, it did not make the effectiveness of its exercise of its unconditional right dependent upon an ultimate determination of

the validity of the reason it gave for its action.

Since we conclude that a verdict should have been directed for the defendant, we need not consider the other questions presented arising out of the denial of the defendant's motion for a new trial.

Reversed.

---

United Insurance Company, 230 S.C. 465, 96 S.E.2d 464; National Bankers Life Ins. Co. v. Bunnell, Tex.Civ.App., 227 S.W.2d 851.

12. In any event, we find nothing in the decisions of the Supreme Court of South Carolina at variance with the views expressed here. Harwell v. Mutual Ben. Health & Accident Ass'n., 207 S.C. 150, 35 S.E.2d 160, may be inconsistent with Prescott v. Mutual Ben. Health & Accident Ass'n, 133 Fla. 510, 183 So. 311, but the court in Harwell spelled a continuing promise by the insurer out of the provision for increasing benefits in succeeding years if the policyholder paid each premium when due. There was no such provision here. We find nothing in the South Carolina cases which suggests that the Supreme Court of that state would hold that the insurer had not here plainly reserved the option to decline to accept a renewal premium. See Chastain v. United Insurance Company, 230 S.C. 465, 96 S.E.2d 464.