108

WILLIAM D. BURK, Appellee, v. MUTUAL BENEFIT
HEALTH & ACCIDENT ASSOCIATION OF OMAHA,
Appellant. —388 S.W.(2d) 628.

Western Section, Jackson. September 3, 1963.

Certiorari Denied by Supreme Court December. 5, 1963.

Emmett W. Braden, Elmore Holmes, III, and Armstrong, McCadden, Allen, Braden & Goodman, Memphis, for appellant.

W. B. Rosenfield, Richard H. Kremer, and Rosenfield, Borod, Fones & Bogatin, Memphis, for appellee.

CARNEY, J.   Upon the trial below the Chancellor held that a health and accident policy No. 68-35942 issued October 29, 1927, in favor of the complainant, William D. Burk, was in full force and effect and would continue in full force and effect throughout the life of the insured, William D. Burk, so long as the annual premiums are paid in advance in accordance with the terms and provisions of the policy. The Chancellor allowed the complainant, Burk, the recovery of the sum of $199.09 representing hospitalization and disability benefits under the policy. He also held null and void a new policy numbered 133399-57M dated 4/1/57 and ordered refunded to the complainant premiums paid thereunder less certain

premiums due and owing under old policy No. 68-35942 in the net amount of $921.20 making a total judgment of $1,120.29. The defendant, Mutual Benefit Health & Accident Association, has appealed and assigned error. Complainant's testimony is undisputed.

On October 29, 1927, the defendant, generally referred to as Mutual of Omaha, issued its health and accident policy No. 68-35942 to the plaintiff, William D. Burk, a certified public accountant who was then 36 years of age. The policy provided for an initial payment in advance of $78.00 for the first year and "the payment in advance of premiums of $68.00 annually or $17.00 quarterly thereafter, beginning with April 1, 1928, is required to keep this policy in continuous effect." Mr. Burk paid the premiums of $68.00 per year continuously through March, 1956.

Sometime shortly prior to April 1, 1957, a local agent of the defendant, Mr. B. J. Glick, called upon Mr. Burk at his office in Memphis, Tennessee, and notified him that the old policy No. 68-35942 which had been in effect for almost 30 years would be cancelled as of April 1, 1957, because Mr. Burk had reached the age of 65. He offered Mr. Burk a new policy with much less benefits which provided for an annual premium of $221.60 per year. Mr. Burk refused the offer of the new policy and went down to the defendant's local office in Memphis and attempted to pay the premium on the old policy which would be due on April 1, 1957. The local office rejected the premium and Mr. Burk wrote the following letter to the home office of defendant:

"March 1, 1957

Mutual Benefit Health & Accident Association
Omaha, Nebraska

Gentlemen:

Enclosed is my check in amount of $68.00 dated March 1, 1957 issued to your Company in payment of annual premium due April 1, 1957 on Policy #68-35942 issued October 29, 1927. This check was offered to your Memphis Office today, and they did not accept it.

Recently a representative of the Company called on me and stated that the policy was to be cancelled since I had reached the age of 65 years during the past year. The only alternative offer was that a new policy could be issued calling for a premium of $108.00 per year for $100.00 per month benefits. The new policy in effect would cost (including benefits when in the hospital) almost five times the premium on the present policy. This action is so contrary to my conception of the Company's policy that it is difficult for me to accept it unless it is approved by the Home Office. As a matter of fact there is a provision in the policy to the effect 'no change in this policy shall be valid unless approved by an executive officer of the association, and such approval must be endorsed hereon'. There is attached to the policy also the following endorsements:

'Non-Cancellable Endorsement

The Association cannot cancel this policy during any period for which the premium has been paid.

It is further understood and agreed that this policy cannot be cancelled by the Association during any period of disability of the Insured.

IN WITNESS WHEREOF, MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION has caused this endorsement to be signed by its President and its Treasurer.

P. P. Priss, Treasurer

H. S. Weller, President'

Your record of this policy will show that in the 27 years no claim has ever been made for the benefits accruing while in a hospital and only a few small claims have ever been made.

There is no provision in the policy to cancel at any specific age, and I am offering this payment in the belief that it is not your desire to cancel the policy.

This policy was acquired when you and I both were much younger, and in those years I had many opportunities to defend your Company and its policies because of my pleasant relationship with the Company and its local manager, Mr. A. W. Heuertz.

Yours very truly,
/s/ W. D. Burk
W. D. Burk

WDB/b
encl.
cc: Memphis Office''

He received in return the following letter from the defendant company:

"March 8, 1957

Mr. W. D. Burk,
448 Angelus,
Memphis, Tennessee.

Dear Mr. Burk:                    Policy 68-35942

Thank you for your letter of March 1, 1957, regarding the continuance of your 68 policy. We appreciate your writing us, Mr. Burk, so that there will be no misunderstanding regarding our action.

As you may know, Mr. Burk, most insurance companies automatically discontinue the type of coverage which you have at age 55, 60 or 65. Mutual of Omaha has always attempted to provide protection as long as possible under these policy forms. Changing conditions, however, have now made it necessary that your insurance program be adjusted. Since you were first insured with Mutual, many different types of insurance protection have been developed and it was felt that you would be interested in continuing your membership under one of these new contracts. It was for this reason that our representative called on you to discuss this new plan with you.

This is strictly in accordance with the provisions of your policy, since it is like the majority of such policies in force throughout the country today, a renewable term contract. By this we mean that both the insured and the insurer may allow this policy to expire at the end of any given term.

In this connection, may we respectfully refer you to paragraph C of the Additional Provisions of your policy, which states 'acceptance of any premium shall be optional with the Association.' This type of cover-

age was not designed to provide guaranteed renewable protection, but was introduced on the market to provide maximum coverage at the lowest possible premium, in contrast to the true noncancellable policies which carry a higher premium which many people cannot afford. Then, too, the great majority of these noncancellable and guaranteed renewable forms provide for automatic termination at a specified age, usually 60 or 65. A person who has carried a term policy past the normal automatic termination age of noncancellable and guaranteed renewable policies, has received the benefits of smaller premium payments and extended coverage.

The noncancellable endorsement to which you refer provides that the Association cannot cancel this policy during any period for which the premium has been paid. This applies to the cancellation of your policy within the term for which the premium has been paid and accepted or during a period of disability. It does not, however, affect the Association's right to accept or refuse a renewal premium at the expiration of any term. This endorsement was placed on your policy at no charge by the Association to clarify for the policy-owner his right to continue his policy during the term for which the premium had been paid and accepted, and so that he would have the assurance that his policy could not be canceled during any disability.

Your long membership in the Association has been very much appreciated, Mr. Burk, and we certainly want to continue your membership under one of our new forms. We urge you to again contact our local office and discuss your insurance program with them so that you might accept the coverage for which you are now qualified.

Since your 68 policy will not be continued beyond the April 1, 1957, renewal date, we are returning to you your personal check in the amount of $68.00.

Sincerely,
R. J. McMahon,
MB Policy Service Department

RJMcM:AS
Enc.
cc: A. W. Heuertz''

After the home office refused to continue the old policy in force and to accept Mr. Burk's check for the premium he signed the application for and received the new policy No. 133399-57M at the new annual premium of $221.60. Just prior to April 1, 1958, and prior to April 1 of each year thereafter Mr. Burk tendered to the defendant the sum of $68.00 as the renewal premium on the old policy No. 68-35942 and each time the company has refused such tender of the premium by returning the check to the complainant.

In May, 1959, Mr. Burk sustained a herniated esophagus requiring surgery. He was hospitalized from May 14 through May 23, 1959, and was partially disabled through June 8, 1959. He made timely claim for payment of benefits under the old policy which was refused. On September 9, 1959, complainant filed his original bill in this cause in which he sought recovery of the hospitalization and disability benefits under the old policy No. 68-35942; cancellation of the new policy No. 133399-57M and return of premiums thereunder.

On September 18, 1959, defendant filed a demurrer to the original bill, on the ground that the bill showed on

its face that policy No. 68-35942 had been rightfully and effectively terminated as of April 1, 1957, by defendant's exercise of its option to refuse to accept the renewal premium. By interlocutory decree of January 29, 1960, the Court overruled this demurrer, for the reasons stated in a memorandum opinion filed January 22, 1960. In this opinion the Chancellor stated:

"In the opinion of the Court the provisions of said policy are inconsistent and produce an ambiguity which renders applicable the rule that equivocal or doubtful language in the terms of a policy must be interpreted against the insurer. The Court construes said policy to be a continuous non-cancellable contract, so long as the insured paid the premiums as they became due.

"The Court finds that Policy No. 68-35942 is in full force and effect and will continue in full force and effect so long as complainant pays the annual premium thereon."

Defendant was granted leave to rely upon the same defenses in its answer as were interposed by the demurrer. Answer was filed on February 8, 1960. Following the usual specific admissions and denials of the allegations of the original bill, defendant alleged its theory and contentions as follows:

"VI.

"The defendant denies that it has breached any obligation to complainant under policy No. 68-35942 or that it perpetrated any fraud upon complainant in informing him that said policy would not be renewed beyond the term ending on or about April 1, 1957 or in inducing complainant to apply for and procure policy

No. 133399-57M. Defendant avers that policy No. 68-35942 provided for term insurance; that the coverage provided by said policy terminated at the end of every such term, unless renewed for an additional term by agreement of both parties, such agreement to be evidenced by complainant's tender of the renewal premium and the acceptance thereof by defendant; that the terms of said policy gave defendant the right to refuse to renew said policy beyond the end of any given term by refusing to accept the renewal premium; that defendant exercised this right by refusal to renew said policy beyond the term ending on or about April 1, 1957; that complainant was fully advised by defendant of its exercise of this right without fraud or misrepresentation; that complainant was offered coverage under a new policy, No. 133399-57M; and that complainant accepted said insurance policy without any fraud or misrepresentation on the part of defendant.

## "VII.

\* \* \* \* \* \*

"Defendant avers that said policy (No. 133399-57M) contains as a material and integral part thereof a 'continuous benefits rider'; that said rider expressly provides that it is made a part of said insurance policy 'in consideration of the discontinuance of coverage under policy No. 68-35942'. The defendant avers that irrespective of its right to refuse to renew the old policy, the foregoing provision contained in the new policy constitutes a mutual, bilateral agreement to rescind, cancel or terminate the old policy, and that said agreement was entered into by complainant for a sufficient consideration and without fraud or misrepresentation on the part of defendant."

It is stipulated that if old policy No. 68-35942 was in force at the time of the hospitalization and illness complainant is entitled to recover the benefits allowed by the Chancellor in the amount of $199.09 and it is further stipulated that the complainant is not entitled to any benefits under new policy No. 133399-57M because this policy expressly excludes the first thirty days of disability.

The case was tried on oral testimony by consent. Complainant, W. D. Burk, was the only witness.

In sustaining the contention of the complainant the Chancellor filed the following memorandum opinion:

"This Court has upon demurrer, heretofore held that policy No. 68-35942 issued to complainant on October 29, 1927, was a continuous non-cancellable contract, so long as the complainant continued to pay the premiums as they came due.

"At the trial of this cause the Court was of the opinion that the said policy remained in full force and effect up to the present time, unless the rider attached to the new policy, No. 300-133399-57M, purchased by the complainant on April 1st, 1957, served to cancel complainant's rights under his original policy.

"The defendant contends that the acceptance of the said rider by the insured amounted to an acquiescence by him in the association's action in discontinuing coverage of complainant's original policy.

"The Court finds that a short time prior to March, 1957, an agent and representative of the defendant association informed the complainant that Policy No. 68-35942 would not be renewed by the defendant association, as complainant had reached his sixty-fifth birthday. The said agent and representative informed

complainant that the only way he could secure coverage from the defendant was to purchase a new policy and pay an annual premium of $221.60. Relying upon the representation of defendant's agent and representative, complainant on March 12, 1957, applied for a policy in order to be insured, despite his opinion and contention that the defendant was not permitted to cancel the original policy.

"On March 1, 1957, complainant sent a check to defendant for $68.00, which was the premium then due upon the original policy, acceptance of which defendant rejected on March 8, 1957. On March 28, 1958, complainant sent another check to the defendant for $68.00, as the premium upon said policy of insurance, and followed the same course of action on March 19, 1959. Defendant returned said two checks dated March 28, 1958 and March 19, 1959.

"Obviously, the complainant did not want the new policy and purchased it only as a protection should the old policy prove to be cancellable.

"This Court has found that the original policy remained in effect at the time the new policy was issued, therefore the very coverage which defendant alleges to have given to the complainant by the attachment of the rider in question was already his under the provisions of his original policy.

"Had the defendant, in its rider, provided coverage of some risk not formerly covered by complainant's original policy, the defendant could then contend that complainant was receiving economic benefit and that there was a valuable consideration flowing to him in exchange for his acquiescence in the defendant association's action in discontinuing the old policy.

"The effect of the rider was to increase the coverage of the new policy, but not to increase the coverage of the old policy. And in the absence of a showing that complainant received some benefit not formerly possessed by him under the terms of Policy No. 68-35942, the defendant cannot be said to have given any consideration to the insured in exchange for his release of the defendant's obligation under the old policy.

"The Court therefore finds that there is no consideration to support the rider, and that the presence of the rider of the new policy in no way changed the rights of the parties under the old policy.

"The Court further finds that said old policy is a continuous non-cancellable contract, in full force and effect so long as the complainant pays the annual premiums thereon.

"All other matters are reserved.

"A decree will be accordingly presented to the Court for entry.

"This 10th day of July, 1962."

Assignments of error I and II insist that His Honor the Chancellor erroneously awarded recovery of benefits under old policy No. 68-35942 for two reasons: (1) The company had the express authority to and did exercise its right to refuse to renew the old policy, and (2) the "continuous benefits" rider, as an integral part of the new policy 133399-57M constituted a mutual agreement for the rescission or "discontinuance of coverage" of old policy 68-35942.

Assignment of error No. III insists that even if His Honor the Chancellor should possibly be correct in awarding a recovery under old policy No. 68-35942, he

had no authority to decree the cancellation of new policy No. 133399-57M and award a recovery for the return of premiums paid thereon by the complainant.

The only provisions in the old policy relating to term, renewal and cancellation of the policy are as follows:

"STANDARD PROVISIONS

\* \* \* \* \* \*

"3. If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of the premium by the Association or any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance.

\* \* \* \* \* \*

"12. If the Insured shall at any time change his occupation to one classified by the Association as less hazardous than that stated in the policy, the Association, upon written request of the Insured and surrender of the policy, will cancel the same and will return to the Insured the unearned premium.

\* \* \* \* \* \*

"ADDITIONAL PROVISIONS

\* \* \* \* \* \*

"(c) The copy of the application endorsed hereon is hereby made a part of this contract and this policy is issued in consideration of the statements made by the Insured in the application and the payment in advance of Seventy-eight ($78.00) Dollars the first year; and the payment in advance of premiums of Sixty-eight ($68.00) Dollars annually or Seventeen ($17.00) Dollars quarterly thereafter, beginning with *April 1st, 1928,* is required to keep this policy in continuous effect. If any such dues be unpaid at the office

of the Association in Omaha, Nebraska, this policy shall terminate on the day such payment is due. The mailing of notice to the Insured at least fifteen days prior to the day they are due shall constitute legal notice of dues.

"The acceptance of any premium on this policy shall be optional with the Association, and should the premium provided for herein be insufficient to meet the requirements of this policy, the Association may call for the difference as required.

"(d) The term of this policy begins at 12 o'clock noon, Standard Time, on date of issue against accident and on the thirty-first day after date of issue against disease and ends at 12 o'clock noon on date any renewal is due."

Attached to the policy are the following riders:

1. "NON-CANCELLABLE ENDORSEMENT

"The Association cannot cancel this policy during any period for which the premium has been paid.

"It is further understood and agreed that this policy cannot be cancelled by the Association during any period of disability of the Insured."

2. "WAIVER OF PREMIUM

"In case of permanent total disability of the Insured, due to accidental injury or sickness, there will be no further premiums payable on this policy, but the Insured will continue to draw benefits as provided in the policy."

The foregoing riders are printed in big type on separate pieces of paper approximately 6½ inches long and 3½ inches wide and glued to the policy.

Apparently this appeal presents a question of first impression in Tennessee. None of our reported cases have construed provisions identical or similar to the provisions of the subject policy. However, the defendant, Mutual Benefit Health & Accident Association, has been in litigation over the disputed provisions of the subject policy many times in other jurisdictions. In most of the litigation the defendant has been successful. In the states of Florida, Arkansas, Missouri, Oklahoma, Georgia, Mississippi and Texas the courts have sustained the contention of the appellant that the provisions of the subject policy are not inconsistent nor ambiguous and that the defendant insurer has the absolute and unqualified right to refuse to renew the policy on any renewal date.

Cases from these jurisdictions cited and relied upon by the appellant are as follows:

Williams v. Mutual of Omaha, 297 F.(2d) 876 (4th Cir. 1962) (from District Court for South Carolina but applying Florida law).

Mutual Benefit Health & Acc. Ass'n. v. Cohen, 194 F. (2d) 232 (8th Cir. 1952) (from District Court for Missouri).

Mutual Benefit Health & Acc. Ass'n. v. Lyon, 95 F.(2d) 528 (8th Cir. 1938), reversed on other grounds, 305 U.S. 484, 59 S.Ct. 297, 83 L.Ed. 303 (1939) (from District Court for Arkansas).

Smith v. Mutual Benefit Health & Acc. Ass'n., 10 F. Supp. 110 (D.W.D.Okla. 1933).

Rabb v. Mutual Benefit Health & Acc. Ass'n. 98 Ga. App. 193, 105 S.E.(2d) 396 (1958).

Mutual Benefit Health & Acc. Ass'n. v. Caver, 169 Miss. 554, 152 So. 897 (1934).

Ray v. Mutual Benefit Health & Acc. Ass'n. Mo.App., 220 S.W.(2d) 622 (Mo.App.1947).

Jordan v. Washington Nat'l Ins. Co., 219 Ark. 530, 243 S.W.(2d) 367 (Ark.1951).

Prescott v. Mutual Benefit Health & Acc. Ass'n., 133 Fla. 510, 183 So. 311, 119 A.L.R. 525 (1938).

Davis v. Mutual Benefit Health & Acc. Ass'n., 168 Okl. 514, 34 P.(2d) 579 (1934).

National Bankers Life Ins. Co. v. Bunnell, 227 S.W. (2d) 851 (Tex.Civ.App.1950).

In some of these cases provisions identical with the Burk policy are construed and upheld in favor of the insurer and in others provisions only slightly different are construed and upheld in favor of the contention of the appellant.

In only three jurisdictions have there been decisions adverse to the contention of the appellant: South Carolina, New Jersey and Montana. In the case of Harwell v. Mutual Benefit Health & Accident Association, 1945, 207 S.C. 150, 35 S.E.(2d) 160, 161 A.L.R. 183, a policy issued by the defendant company differing only slightly from the policy involved in the instant case was held by the Supreme Court of South Carolina to be ambiguous and the court allowed recovery of damages for wrongful refusal of the defendant association to accept a renewal premium.

In the case of Cohen v. Mutual Benefit Health & Accident Association, 1944, 134 N.J.Eq. 499, 36 A.(2d) 288, the policy provided "the payment in advance and acceptance by the association of premiums of $24.00 quarterly thereafter beginning June 1, 1937, is required to

keep this policy in continuous effect." The New Jersey Court construed "acceptance" as used in the policy to mean merely "receipt" in view of various phrases in the policy such as "waiver of premium," "premium payable," and "default in payment of the agreed premium" all of which presupposed an existing agreement that premiums should be paid and accepted and rebutted the idea that payments should be dependent on the possibility of reaching other agreements in the future. The various phrases mentioned above are all contained in the Burk policy.

In a recent case of Holmstrom v. Mutual Benefit Health & Accident Association, 1961, 139 Mont. 426, 364 P.(2d) 1065, the Supreme Court of Montana had for decision the construction of a policy almost identical to the policy in this case. In the Holmstrom case there had been a refusal by the company to accept a renewal premium after the policy had been in effect for 31 years. In that case the court recognized that the majority view of the courts throughout the United States supported the contention of the defendant insurer but the Supreme Court of Montana felt that it should follow the view it feels is best expressed by the law. The court, in the Holmstrom case, found that portion of the policy which reserved to the insurer the option to accept any premium to be ambiguous and then followed the general rule that the policy must be construed most favorably to the policy holder.

With all deference to the insistence of solicitors for the appellant and to the courts of the several states which comprise the majority view, we feel that the minority view represents the sounder view. We hold that the policy is ambiguous.

In Simpkins v. Business Men's Assur. Co. of America, 1948, 31 Tenn.App. 306, 310, 215 S.W.(2d) 1, 3, the Middle Section of this Court, speaking through Judge Hickerson, quoted with approval the following definition of the word "ambiguous":

" 'Ambiguous' is defined in 3 C.J.S., page 1037, as follows:

" 'The word has been defined as capable of being understood in more senses than one; obscure in meaning through indefiniteness of expression; having a double meaning; doubtful and uncertain; meaning unascertainable within the four corners of the instrument; open to construction; reasonably susceptible of different construction; uncertain because susceptible of more than one meaning. Its synonyms have been said to be "doubtful," "equivocal," "indefinite," "indeterminate," "indistinct," "uncertain," and "unsettled." ' "

In the first place, this so-called right of refusal on the part of the insurer to accept a renewal premium is shown in small print at almost the very end of the policy under the general term "Additional Provisions" rather than being shown in bold type and being given a more prominent place in the policy.

Second, paragraph (c) of Additional Provisions makes the unequivocal statement that the payment in advance of $68.00 annually beginning April 1, 1928, *is required to keep this policy in continuous effect*. The very next sentence refers to such payment as "dues" and provides that the policy will terminate upon the failure of the payment of such dues. There is no mention that the contract can only be renewed with the express permission of the association.

Third, under Standard Provisions, subparagraph 3 quoted above, default of the agreed premium on the policy is dealt with. Strictly speaking if the policy were clearly understood by both parties to be only renewable term insurance, as contended by the appellant, then there could be no default in the payment of premiums and there could be no default in the payment of dues to the association. The policy would not terminate because of the nonpayment of premiums or dues but strictly speaking would terminate by the expiration of the term.

Fourth, since the only provision in the policy referring to cancellation is in section 12 of Standard Provisions quoted above which provides for cancellation only with the consent of the insured and since the policy contained a rider providing for waiver of premiums in case of permanent disability it is doubtful that the non-cancellable endorsement actually added any benefits to the insured under the policy. We think that the person of ordinary education and intelligence would understand the phrase ''cancellation of a policy'' to mean the wilful and intentional termination of a policy or contract which was in force and not the mere failure to renew a policy of which the term was expiring.

Fifth and finally, we agree with the Chancellor that the one sentence in the policy upon which the appellant relies as authority to renew the policy is itself ambiguous within the definition approved by this Court. Not only might a person of ordinary intelligence and education reasonably interpret this sentence as meaning that the association reserved the right to increase the premium on the policy and hence reserved the option to accept or reject any renewal premium for the purpose of demanding a higher premium, but also such person might interpret

the option as referring to acceptance of the late premium provided for in section 12 of Standard Provisions quoted above.

In National Bank of Commerce v. New York Life Insurance Co., 1943, 181 Tenn. 299, 305, 181 S.W.(2d) 151, 153, our Tennessee Supreme Court quoted with approval the following statement from a case in the New York Court of Appeals:

"But insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import."

We paraphrase another quotation from the same case by saying it would appear a very simple thing for a corporation doing business on the scale as that done by the appellant to have written a clause into its policies stating in plain simple language that the insurance policy which it issued was a contract for renewable term insurance which could only be renewed at the end of each term by the mutual consent of both the insured and the insurer and that both insurer and insured had the unqualified right to let the policy expire without renewal at the end of any term.

The letter which defendant wrote to Mr. Burk dated March 8, 1957, in one short sentence explained to Mr. Burk that a renewal term contract was one which both the insured and the insurer might allow to expire at the end of any given term. No such simple language appears anywhere in the policy. We can't escape the conclusion that the association deliberately arranged the printing

of the policy, the wording of the policy and the location of the various provisions of the policy in such a way as to lead the complainant and other prospective policy holders to understand and believe that the policy was renewable from year to year by the payment of the annual or quarterly premiums stated in the policy or such increased annual premiums as it might become necessary for the association to charge because of changed conditions. The plaintiff's conduct demonstrates that he so understood the policy.

■ The equities are certainly with the complainant. He paid his premium annually for 30 years with very few claims. The defendant association never gave him any intimation or notice that it would refuse to renew when he passed 65 years of age.

"* * * where by reason of ambiguity in the language employed in a contract of insurance, there is doubt or uncertainty as to its meaning, and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the company, the former will be adopted." Alsup v. Travelers Ins. Co., 196 Tenn. 346, 354, 268 S.W.(2d) 90, 93.

■ Also we find no merit in assignment of error No. II to the effect that the continuous benefit rider attached to the new policy No. 133399-57M constituted a mutual bilateral agreement to rescind, cancel or terminate the old policy. Actions and the testimony of the complainant, which is undenied, both show affirmatively that there was no meeting of the minds and that the complainant never intended to abandon or release any claims which he had under the old contract. Likewise, we agree with the statement of the Chancellor that complainant Burk received no benefits under this rider attached to the new policy

which he did not already have under the old policy. The evidence fully supports complainant's testimony that he took the new policy only as protection in the event he should fail to establish the legality of the old policy. The appellant, at all times in its negotiations with the complainant, maintained the position that it was refusing to renew the old policy and was offering the complainant an entirely new policy and hence the recitations in the rider were entirely without consideration. Assignment of error No. II is respectfully overruled.

By assignment of error No. III appellant insists that His Honor the Chancellor was in error in allowing the complainant to recover all the premiums paid under the new policy dated April 1, 1957. The Chancellor charged the complainant with all the unpaid premiums on the old policy dated October 29, 1927, and offset them against recovery of the premiums under the new policy leaving a net recovery of premium payments of $921.20. While it is certainly true that the complainant wanted only one policy and took the new policy only after the company had refused to accept payments under the old policy, yet the fact remains that the complainant was not actually coerced into applying for the new policy. He could have protected and established his rights under the old policy by litigation without applying for the new policy. Instead he elected to take the new policy and to pay the premiums thereon, to make annual tender of the premiums under the old policy and to bide his time when he should have a claim for compensation under the old policy.

In our opinion it would be inequitable to require the defendant to refund to the complainant all of the premiums paid by him under the new policy. Substantial justice can be done both parties by requiring the defend-

ant to refund to the complainant a sufficient amount of the premiums paid under the new policy to offset the back premiums due and payable on the old policy from April 1, 1957, through the period for which the premiums have been paid on the new policy and by awarding the complainant a money judgment in the amount of $199.09 which is the amount of his claim under the old policy. Complainant will have the option to keep the old policy in force by payment of premiums thereon from and after the date of the last payment on the new policy. The new policy will be continued in force only upon the mutual agreement of complainant and defendant.

Assignment of error No. III is sustained and the decree of the Chancellor will be modified and the judgment in favor of the complainant will be reduced from $1,120.29 to $199.09. As modified the decree of the Chancellor will be affirmed. The costs will be taxed against the appellant, Mutual Benefit Health & Accident Association.

Judge Shriver of the Middle Section of this Court sat in place of Judge Avery who recused himself.

Bejach, J., dissents.

Shriver, J., concurs.

SHRIVER, J. (concurring). It seems that we have no reported decision in Tennessee wherein policy provisions identical with or closely similar to those under consideration here have been construed. However, as is pointed out by Judge Carney in the Opinion prepared by him in this case, the appellant has been in litigation over these disputed policy provisions many times in other jurisdictions and the Courts have sustained the position taken in several instances.

On the other hand, the Courts of Montana, New Jersey and South Carolina have held adversely to Mutual Benefit Health and Accident Association concerning these policy provisions. The Courts in these States have found that the language in question was ambiguous and that the rule of construction favoring the policy holder should be applied.

These cases and the policy provisions with which they deal, and with which we deal here, are fully discussed in Judge Carney's opinion filed herein, and I concur in his course of reasoning and conclusions.

While the majority view expressed in the other jurisdictions is supported by technical rules of construction and could be logically followed, I think the minority view as expressed by the Courts of Montana, New Jersey and South Carolina is sounder and more equitable.

I cannot escape the conviction gained from this record that the appellant Assurance Association skilfully chose the language with respect to its right to accept or reject any premium and placed these words among the ''Additional Provisions'' in such manner as to obscure their significance. Furthermore, that the bold type used in the rider attached to the policy prominently displaying the words ''NONCANCELLABLE ENDORSEMENT'', was part of a device to aid in the sale of this kind of policy, and in keeping it in force until it became advantageous to the company to cancel it after the insured had been lulled into a sense of security over a long period of years.

Since lawyers and Courts disagree as to whether or not this language is of doubtful meaning, it seems obvious that the average layman might be easily misled by it whether intentionally so or not.

This company having discovered from experience, as reflected by the large number of cases wherein this and similar language in its policies has been questioned and litigated, that such language so used is subject to serious misunderstanding, why has it persisted in using it?

Being convinced that the ends of justice and equity will be best served by following the course set forth in Judge Carney's opinion, I concur therein.

BEJACH, J. (dissenting). I respectfully dissent from the majority opinion in this case written by Judge C. S. Carney, Jr. of the Western Section of this Court, as well as from the concurring opinion by Judge Thomas A. Shriver of the Middle Section, who sat in Place of Presiding Judge J. B. Avery, Sr. of the Western Section.

Aside from the fact that, in my opinion, the language of the policy here involved is clear and unambiguous so that the rule of construction which resolves ambiguities against the Insurance Company is never reached, the overwhelming weight of authority in the United States has decided the question in favor of the contention made by appellant in the instant case. As is stated in Judge Carney's opinion, six states have construed either the identical language used in the policy here involved, or similar language, in favor of the contention of the appellant Insurance Company, whereas only three jurisdictions have held otherwise.

In addition, the issuance by appellant of policy 133399-57M dated April 1, 1957, in place and instead of policy 68-35942 issued October 29, 1927, amounts to an accord and satisfaction which would eliminate appellee's claim.

Especially is this true in view of the fact that the new policy 133399-57M contains a rider which expressly provides that it is made part of said policy and that, "in consideration of the discontinuance of coverage under policy No. 68-35942", the new policy was issued. Judge Carney's opinion disallows this defense of the Insurance Company on the ground that the rider was attached to the new policy without any consideration, because Mr. Burk, the insured, had no benefits under the new policy which he did not have under the old policy. In my opinion, the fallacy of this lies in the fact that the Insurance Company did not have to issue the new policy at all, and when it did issue it in the place and stead of the old policy and same was accepted by the insured, Mr. Burk, with this rider attached, there was ample consideration for cancellation of the old policy independent of the Insurance Company's right to cancel the old one under the provisions of same. In any event, this question is foreclosed in Tennessee by the provisions of Sections 24-706 and 24-707 T.C.A., which are as follows:

"24-706. Receipts and releases.—All receipts, releases, and discharges in writing, whether of a debt of record or a contract under seal, or otherwise, shall have effect according to the intention of the parties thereto."

"24-707. Settlements of debts. — All settlements in writing, made in good faith, for the composition of debts, shall be taken as evidence, and held to operate according to the intention of the parties, although no release under seal is given, and no new consideration has passed."

For the reasons stated, it is my opinion that appellant's Assignments or Error I and II should both be sustained and complainant's suit dismissed.

I also dissent from that part of Judge Carney's opinion which sustains Assignment of Error III to the extent, only, that it reverses the Chancellor's ruling cancelling policy No. 133399-57M, but permits complainant to recover under the provisions of policy No. 68-35942 without payment of any premiums thereon subsequent to April 1, 1957. Complainant's annual tender of the premiums for this old policy did not amount to payment of same. If he is entitled to recover under the provisions of the old policy, which, in my opinion he is not, he should, at least, have been required to pay the premiums on same since April 1, 1957. All that his tenders could avail him would be to relieve him from liability for interest on such premiums. Gracy v. Potts, 63 Tenn. 395, 396-397; Lincoln Savings Bank v. Ewing, 80 Tenn. 598, 607; Province v. Mitchell, 44 Tenn.App. 115, 126, 312 S.W.(2d) 861, 866. It seems clear to me that if any claim had been made under the new policy, on any risk therein insured against, appellant would have been liable, the premiums on that policy having been paid; and, if in addition thereto complainant is entitled to recover under the provisions of the old policy, he should at least be required to pay the premiums in arrears on same.

The net result is, that, in my opinion, the decree of the lower court should be reversed in its entirety and appellee's suit dismissed; but, in any event, even if the majority view prevails and he be permitted to recover under the terms of his old policy, he should nevertheless, in that case, be required to pay all premiums which have accrued since April 1, 1957.