OPINION OF THE COURT
James H. Boomer, J.
These motions pose a perplexing problem inherent in professional liability insurance coverage written on a "claims made” *3 basis. The plaintiffs, partners in an engineering firm, were, since May, 1974, insured by the defendant Travelers Indemnity Company against any damages they might be required to pay as the result of any acts or omissions arising out of their professional services. The first policy was issued for one year and was renewed in 1975 only for the balance of the year, Travelers having notified the plaintiffs that it was not issuing any more professional liability insurance in the State of New York for the period after December 31, 1975. After receiving this notification, the plaintiffs obtained a professional liability insurance policy from the defendant American Motorists Insurance Company for a one-year period commencing December 31, 1975. This policy was renewed on December 31, 1976 and was in effect when, in April, 1977, the plaintiffs were served with summonses and complaints in two wrongful death actions arising out of an explosion in the Retsoff salt mine which occurred in April of 1975. Prior to the explosion plaintiffs had performed consulting engineering services relating to water disposal at the mine.
Immediately after receiving the summonses and complaints, the plaintiffs forwarded them to the defendant Travelers Indemnity Company. Travelers refused to defend stating that the Travelers’ policies afforded coverage only when claims were made against the insured during the policy period and that the policy had expired before any claim was made against the insured. American Motorists refused to defend since its policy expressly excluded any claim arising out of the mine explosion. Plaintiffs then brought this lawsuit for a judgment declaring that either Travelers or American Motorists or both must defend plaintiffs against the wrongful death actions.
The policies written by Travelers provide that "this insurance applies only to damages because of any act or omission which occurs on or after May 29, 1974 (the effective date of the first policy issued by Travelers) provided that claim therefor is first made against the Insured during this policy period and reported in writing to the Travelers during this policy period or within 60 days after the termination of the policy period.” The policy period of the last Travelers policy was September 15, 1975 to December 31, 1975. Concededly, no claim or demand was made against the plaintiffs during this period. However, on November 25, 1975, within the policy period, the plaintiffs wrote a letter to Travelers *4 notifying it of potential claims that might arise from the mine explosion.
Plaintiffs’ first argument is that the notice given by plaintiffs to Travelers constituted a "claim”, and, therefore, a claim had been made within the policy period. Under the heading "Definitions” the policy states, " 'Claim’ includes a judgment, arbitration award or any demand for money or services resulting from an actual or alleged act or omission covered hereunder.” Plaintiffs argue that the use of the word "includes” infers that there may be other meanings ascribed to the word "claim” that are not included in the definition. "The term is not ordinarily a word of limitation but, rather of enlargement.” This part of plaintiffs’ argument may be well taken and there may be other meanings ascribed to the word "claim” that are not included in the definition contained in the policy. But those other meanings cannot be found by giving a strained interpretation to the language used. To argue that the language of the policy, "provided that the claim is first made against the insured during the policy period” should be construed to mean also, "provided that notice of a potential claim be given by the insured during the policy period” is to propose an unnatural meaning to the words used. The language of the policy is not ambiguous. No one made a claim or demand against the insured during the policy period and the court cannot find coverage by distorting the language of the policy. For a definition of the word "claim” as used in a professional liability policy, see San Pedro Props, v Sayre & Toso (203 Cal App 2d 750, 755).
In Cornell, Howland, Hayes & Merryfield v Continental Cas. Co. (465 F2d 22), as in the instant case, the plaintiffs, a firm of consulting engineers, had knowledge prior to the termination of the policy period that a claim might be made against them arising out of consulting work they had done during the policy period. Before the policy period had expired, plaintiffs notified the insurance carrier of the "potential claim”. No claim, however, was made against the engineers until after the policy period. The court held that the notice to the insurance company of the potential claim did not constitute a "claim against the insured” within the meaning of the policy. For other cases holding language similar to the "claims made” provision of the Travelers policy to be unambiguous, see Rotwein v General Acc. Group (103 NJ Super 406); Brown *5 Constr. Co. v D & M Mechanical Contrs. (222 So 2d 93 [La]; and Reid v Dayton Title Co. (31 Ohio Misc 275).
Plaintiffs further contend that if the Travelers policy is construed to deny them coverage, then the condition of the policy that excludes coverage for events occurring within the policy period when claims are not made until after the policy period is void as being against public policy. Only one case so holds; all others reject this contention.
Expressly rejecting this contention are: Rotwein v General Acc. Group (supra); Livingston Parish School Bd. v Fireman’s Fund Amer. Ins. Co. (282 So 2d 478 [La]); Lehr v Professional Underwriters (296 Mich 693); Oceanonics, Inc. v Petroleum Distr. Co. (292 So 2d 190 [La]).
Cases approving similar conditions in professional liability policies without discussing the public policy question are: Samuel N. Zarpas, Inc. v Morrow (215 F Supp 887); San Pedro Props, v Sayre & Toso (203 Cal App 2d 750, supra); Brown Constr. Co. v D & M Mechancial Contrs. (222 So 2d 93 [La], supra); Cornell, Howland, Hayes & Merryfield v Continental Cas. Co. (465 F2d 22, supra); Reid v Dayton Title Co. (31 Ohio Misc 275, supra).
The public policy argument is that "claims made” policies restrict the freedom of contract by tying the insured to one insurer in order to maintain continuous coverage. In rejecting this argument the courts have held that retroactive coverage was available so that an insured might have obtained a new policy from another insurer which would insure him for claims made during the period of the new policy for errors or omissions committed prior thereto. (See Rotwein v General Acc. Group, supra, p 415; Oceanonics, Inc. v Petroleum Distr. Co., p 192, supra; and Livingston Parish School Bd. v Fireman’s Fund Amer. Ins. Co., pp 481-483, supra.)
Upholding the public policy argument is Jones v Continental Cas. Co. (123 NJ Super 353, 359). There, the policy provisions were similar to those in the Travelers policy and the court held that the condition limiting coverage to claims made during the policy period was against public policy and void. The court reasoned (p 359), "In this case, clearly the policy provisions in effect inhibit freedom of contract. In order for plaintiff to maintain coverage or have continuity of coverage, he must continue to have defendant as the insurance carrier. Such provisions do inhibit freedom of action in this field.”
While "claims made” policies do tend to inhibit an insured *6 from changing carriers for fear he will lose coverage, it does appear that retroactive coverage is available where the insured is not aware, at the time he applies for and obtains a new policy, of any particular circumstances that may lead to a claim against him. I agree with the majority of the cases and decline to hold "claims made” provisions void solely because they may tend to inhibit the freedom of contract.
A second argument against "claims made” policies is that of unconscionability. None of the cases have held "claims made” policies of professional liability insurance policies to be unconscionable. In no other case, however, did the insurance company refuse to renew its policy after the company had notice of a potential claim and in all of the cases upholding the validity of "claims made” policies, the insured could have obtained coverage against claims made after the policy period, either by renewing his policy with the same insurer or by purchasing retroactive coverage with another company.
In San Pedro Props, v Sayre & Toso (203 Cal App 2d 750, 753-754, supra) the court stated, "At no time, was there a request by [the insureds] for a renewal of the certificate of insurance, nor did [the insurer] * * * at any time cancel the insurance or refuse to renew it.”
In Rotwein v General Acc. Group (103 NJ Super 406, 417, supra), the court commented, "It would appear, however, that to secure continuing protection against any negligence which may have occurred during the policy period, plaintiffs at the end of the policy term could have either purchased a similar policy with General Accident to extend the period of coverage, or purchased a policy with retroactive coverage with another insurer.” In that case the purchase of retroactive coverage from another insurer was possible since the insured had no notice of any defects in the work until after the policy had expired and thus the prospective insurer would have no reason to anticipate that a claim would arise from a particular past act or event.
In Oceanonics, Inc. v Petroleum Distr. Co. (292 So 2d 190, 192 [La], supra), the opinion reads, "The insured was totally free to secure, by payment of a proper premium year after year, completed operations and products liability coverage which would insure it against claims arising from accidents occurring during the particular policy period but resulting from delictual acts which took place anterior to the policy.
"The Market Insurance Company policy in no way re *7 stricted the contractual ability of the insured to secure from any insurance company complete coverage for the risk which arose here.” There, the policy excluded from coverage damage occurring after the policy period. Such a provision would not deter the insured from changing insurance carriers at the expiration of the policy period since damages occurring during the policy period would be covered by the old carrier and a prospective carrier would have no reason to refuse coverage for damages that might occur in the future.
In Reid v Dayton Title Co. (31 Ohio Misc 275, supra), the court, in upholding the validity of a "claims made” policy, commented, "If [the insured] had renewed the policy for another three years, the error discovered [after the expiration of the policy period] would likely have been covered by the policy.”
Unlike the above cases the plaintiffs were not permitted to renew their policy with the Travelers, and they were unable to secure retroactive coverage for claims that might arise out of the mine explosion because any prospective insurer knowing of the deaths caused by the explosion would not want to assume the risk of potential lawsuits. Indeed, American Motorists, understandably so, expressly excluded that risk from its policy when it granted retroactive coverage to the plaintiffs.
The question posed here was recognized but not answered in Livingston Parish School Bd. v Fireman’s Fund Amer. Ins. Co. (282 So 2d 478, 481 [La], supra): "At this point we should note that, under the showing made, the insurer routinely offered to renew the present policy long before its expiration date of July 11th and that, had Kerstens [the insured] renewed it, he would have been covered by a claim made for the July 14th collapse during the policy year of the successor policy. We will therefore not consider a contention that enforcement of the clause would be against public policy if an insurer had refused to renew coverage or had offered to do so only at exorbitant rates.4”
Footnote 4 reads, "Such an issue might indeed be presented, although not by the facts of this case, if indeed an insurer, once having accepted a premium and agreed to cover professional negligence during the policy year, then attempted to withdraw its implied condition of providing continuous coverage at reasonable rates thereafter for the risk so insured, when discovered.”
*8 The proposed Restatement 2d of the Law of Contracts summarizes the doctrine of unconscionability as follows: "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.” (Restatement 2d, Contracts, Tentative Draft No. 5, § 234.)
It is my determination that a provision in a "claims made” policy that permits an insurer, where it has notice of a potential claim to refuse to renew that policy, is unconscionable. Such a provision allows an insurer to avoid the risk of serious potential claims arising from accidents committed within the policy period, and leaves the insured without coverage after the expiration of the policy, since no other insurer will be willing to accept the known risk and thus buy its way into a potential lawsuit.
I, therefore, limit the provision of the Travelers’ policy that requires a claim to be made against the insured during the policy period, to instances where continued coverage is available from the same or from some other insurer, and under the facts of this case, I enforce the remainder of the insurance contract without the unconscionable term.
When Travelers received the summonses and complaints in the death actions, it refused to defend upon the ground that no coverage existed for claims made after the policy period. Having relied upon that ground alone, it waived the condition requiring timely notice of the mine explosion (Appell v Liberty Mut. Ins. Co., 22 AD2d 906).
Summary judgment is granted in favor of plaintiffs declaring that the defendant Travelers is under a contractual obligation to defend the plaintiffs in the lawsuits arising from the mine explosion.
Under the facts submitted on these motions for summary judgment, there is no basis to require the defendant American Motorists Insurance Company to defend the plaintiffs. That company did not have to issue a policy of insurance to the plaintiffs and it had the right, as it did here, to issue a policy that expressly excluded coverage for any claims arising out of the mine explosion which had occurred long before their policy was issued.
There is no basis for any estoppel against American Motorists, for nothing that company did or said misled the plaintiffs *9 to their detriment. For instance, plaintiffs were not induced by American Motorists to change insurance carriers. (See Cornell, Howland, Hayes & Merryfield v Continental Cas. Co., 465 F2d 22, supra.)
Summary judgment is granted declaring that American Motorists, Inc. has no obligation to defend the plaintiffs in this action arising out of the mine explosion.
Summary judgment must be granted in favor of the defendants Lucas and Dake Co., Inc. and William F. Norton dismissing the complaint against them. The complaint states merely that plaintiffs relied upon the defendants to procure insurance to protect plaintiffs particularly for claims arising out of their consulting work at the mine, and that the defendants failed to exercise reasonable care to procure a policy of insurance that effectively covered the plaintiffs. There is no showing of any lack of care on the part of the defendants Lucas and Dake Co., Inc., and William F. Norton. Presumably the plaintiffs feel that the defendants should not have included information about the mine explosion on the application to American Motorists policy since it was plaintiffs’ contention that they were in no way to blame for the explosion. Without knowledge of the explosion defendant American Motorists would not have excluded from its coverage claims arising from the explosion. Lucas and Dake Co., Inc. and William F. Norton were, however, the agents of American Motorists and plaintiffs knew this. Certainly, the plaintiffs could not have expected that the agents would withhold this information from their principal.