Nicholas **EGNATZ, Jr.**, Appellant,

v.

The **MEDICAL PROTECTIVE COMPANY**, Appellee.

No. 56A04–9101–CV–14.

Court of Appeals of Indiana, Fourth District.

Nov. 18, 1991.

Rudolph Tanasijevich, Hammond, R. Steven Ryan, Barce, Ryan & Howard, Kentland, for appellant.

Edward A. Chapleau, South Bend, for appellee.

CONOVER, Judge.

Plaintiff–Appellant Nicholas Egnatz, Jr., M.D. (Dr. Egnatz) appeals the trial court's grant of summary judgment in favor of the Medical Protective Insurance Company (Medical Protective).

We affirm.

Egnatz presents one restated issue for our review:

whether the trial court erred in granting Medical Protective's motion for summary judgment because a genuine issue of material fact existed as to whether there was a duty to renew medical malpractice insurance.

This action was initiated by Dr. Egnatz to recover damages he allegedly incurred when Medical Protective failed to renew his malpractice insurance policy. On October 2, 1986, Medical Protective sent Dr. Egnatz a letter notifying him his medical malpractice insurance coverage would not be renewed when his policy expired on December 31, 1986. The letter advised him to seek coverage elsewhere.

After Medical Protective refused to renew his policy, Dr. Egnatz, who was 71 years old, tried to secure a medical malpractice liability insurance policy with Physicians Insurance Company of Indiana but was refused. Dr. Egnatz did not apply to Indiana Residual Malpractice Insurance Authority (IRMIA).

Eventually Dr. Egnatz sold his practice to Dr. Sira Khaja. With short term insurance which only covered his work as a general physician, he stayed on for four months to introduce his patients to Dr. Khaja. He retired in April, 1987, six years sooner than he had planned.

In December, 1988, Dr. Egnatz filed a complaint against Medical Protective seeking damages for his financial losses due to Medical Protective's negligent and willful refusal to renew his liability insurance policy. On September, 1990, the trial court granted Medical Protective's motion for summary judgment. Dr. Egnatz appeals.

When reviewing the grant of a motion for summary judgment, we stand in the shoes of the trial court and must determine whether there is no genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Fort Wayne Educ. Ass'n v. Board of School Trustees of Ft. Wayne Community Schools* (1991), Ind.App., 569 N.E.2d 672, 675. We must consider all of the pleadings, affidavits, depositions, admissions, answers to interrogatories and testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by the trier of fact. *Scott v. Bodor* (1991), Ind.App., 571 N.E.2d 313, 318. A grant of a summary judgment motion is not intended to be a means of circumventing jury trials or to decide where the preponderance of the evidence lies before the evidence has been fully presented. *Skaggs v. Merchants Retail Credit Ass'n* (1988),

Ind.App., 519 N.E.2d 202, 203. We will affirm a grant of summary judgment on any theory or basis found in the record which supports its entry. *Bicknell Minerals, Inc. v. Tilly* (1991), Ind.App., 570 N.E.2d 1307, 1311, 1318, *reh. denied.*

Dr. Egnatz contends the trial court erred in granting summary judgment in favor of Medical Protective. He maintains its refusal to continue insuring him was arbitrary, capricious, and without justification. It caused him to retire early and to suffer damages from loss of income, he posits.

Dr. Egnatz argues the doctrine of good faith and fair dealing imposes a contractual duty on Medical Protective to renew his policy. Acknowledging this is a case of first impression in Indiana, he cites cases from other jurisdictions which he maintains demonstrate the modern trend to extend the duty of good faith to all aspects of the contractual relationship.

In Indiana, an insurance policy is a contract between the parties and the law of contracts applies. *Davidson v. Cincinnati Ins. Co.* (1991), Ind.App., 572 N.E.2d 502, 503. In order to create a contract of insurance there must be a meeting of the minds of the parties on all the essential elements of the contract. *Cook v. Michigan Mutual Liability Co.* (1972), 154 Ind. App. 346, 289 N.E.2d 754, 758, *reh. denied, trans. denied.*

Noted authorities in the area agree that in order for the renewal of an insurance policy to be effective, there must be an offer to renew and an acceptance thereof. *See Couch on Insurance 2d*, Vol. 18, § 68:31; 44 C.J.S. *Insurance* § 283, pp. 1126–1127.

None of the cases Dr. Egnatz cites recognize a legal obligation to renew a terminated policy. In *Heen & Flint Associates v. Travelers Indemnity Company* (1977), 93 Misc.2d 1, 400 N.Y.S.2d 994, the insurance company refused to defend a death claim because a policy provision permitted no coverage for claims made after 60 days from the termination date of the policy. The court opined such a clause was unconscionable and held the insurance company was under a contractual obligation to defend the lawsuit which the company knew was initiated before the 60 days. *Id.,* 400 N.Y.S.2d at 999. This case does not support the right to bring an action for arbitrary non-renewal.

Similarly, *Burk v. Mutual Benefit Health & Accident Association of Omaha* (1963), 54 Tenn.App. 108, 388 S.W.2d 628, is not a termination case. In *Burk*, the court found the non-cancellation clause to be ambiguous and would not permit the original health insurance policy to be cancelled so long as premiums were paid. *Id.,* 388 S.W.2d at 637. The case turned not on the non-renewal of the policy but on the ambiguous policy language.[1]

In fact, cases from other jurisdictions establish, as a matter of law, an insurance company is under no obligation to renew policies of long time insureds. *Gahres v. PHICO Insurance Company*, 672 F.Supp. 249 (E.D.Va.1987), held no implied contractual duty of good faith and fair dealing requires a medical malpractice insurance company to renew a policy when an unambiguous non-renewal clause was in the policy. The *PHICO* court cites *Coira v. Florida Medical Ass'n* (1983), Fla.App., 429 So.2d 23, to support its holding. In *Coira* the court recognized an implied covenant of good faith and fair dealing in a medical malpractice insurance contract but found no duty to renew a medical malpractice insurance policy which had expired absent a common law or statutorily imposed duty to renew. 672 F.Supp., at 253.[2]

---

1. Likewise, the other cases cited do not support Dr. Egnatz's contention. In *Harwell v. Mutual Ben. Health & Accident Ass'n* (1945), 207 S.C. 150, 35 S.E.2d 160, the court deemed the ambiguous wording and inconsistent clauses in the contract itself made the contract non-cancellable. *Id.,* 35 S.E.2d at 162. In *FDIC v. American Home Assurance Company* (1979), Tex.Civ.App., 585 S.W.2d 756, *reh. denied,* the court held because a policy clause allowed the insured to request renewal and the insurance company did not answer such a request, the policy was renewed as a matter of law. *Id.,* at 759–760.

2. While the second issue in *PHICO* is jurisdiction, we reject Dr. Egnatz's assertion this case was decided on jurisdictional grounds and the

*Gautreau v. Southern Farm Bureau* (1983), La., 429 So.2d 866, 869, 37 A.L.R.4th 856, held absent statutory restrictions, an insured may not defeat the insurer's contractual right not to renew a policy by asserting the insurer's exercise of its option was arbitrary and capricious.

The above mentioned cases are in line with the general rule that if there is no clause in the policy imposing a duty of renewal, neither party has any right to require a renewal. 17 *Couch on Insurance 2d* § 68.11 (1967). *See also* 13A Appleman, *Insurance Law and Practice* § 7642 (1976); 43 Am.Jur.2d *Insurance,* § 443.

■ In the instant case, the policy did not contain an automatic renewal clause. In October, 1986, Medical Protective wrote to Dr. Egnatz stating it would not renew his policy. (R. 8, 152). Dr. Egnatz did not submit evidence to establish the parties agreed to create a new contract of insurance. No contractual obligation to renew remained beyond the terms of the original contract. Therefore, the trial court did not err in concluding, as a matter of law, that no duty exists requiring Medical Protective to renew Dr. Egnatz's policy. (R. 105).

In the alternative, Dr. Egnatz contends Medical Protective is estopped from failing to renew his policy because of its course of conduct of automatically renewing his malpractice policy for 39 years. Additionally, he asserts Medical Protective waived its right to enforce its December termination clause.

■ Equitable estoppel is a preclusion of asserting rights which otherwise might exist through a change of position by an innocent party. The facts necessary to establish equitable estoppel require a misrepresentation of past or existing facts such as would give rise to a claim for fraud. *Reeve v. Georgia–Pacific Corp.* (1987), Ind. App., 510 N.E.2d 1378, 1382.

■ Waiver is an intentional relinquishment of a known right and is a voluntary act. *Protective Insurance Company v. Coca–Cola Bottling Company–Indianap-*

*olis–Incorporated* (1981), Ind.App., 423 N.E.2d 656, 661, *reh. denied, trans. denied.* In the area of insurance law, the distinctions between estoppel and waiver are difficult to preserve and the terms have been used interchangeably. *Id.,* at 661.

■ Medical Protective contends Dr. Egnatz fails to fulfill the elements of equitable estoppel or waiver. Dr. Egnatz correctly states estoppel and waiver can be based upon the actions or course of conduct of an insurer. Yet he has shown no disputed material facts which bring his case within either doctrine. Since Medical Protective did not represent to Dr. Egnatz his insurance would be renewed, estoppel has not been established. He was notified by letter two months before the end of his policy period that his insurance would not be continued and he should secure insurance elsewhere.

Additionally, the facts contained in the depositions and affidavits do not establish prejudice. Dr. Egnatz urges Medical Protective's course of conduct led him to pass up possible earlier opportunities to obtain similar coverage with a different company when he was younger and more likely to obtain coverage. However, in his deposition Dr. Egnatz stated he knew it was possible to obtain surgery malpractice insurance through Indiana Residual Malpractice Insurance Authority (IRMIA). He did not seek the high risk insurance of IRMIA because he feared he would be viewed as a substandard doctor, unable to obtain standard malpractice insurance. Also, he did not want to pay significantly higher premiums. (R. 125, 152, 169). The record reveals the opportunity for insurance was not foreclosed. We cannot agree it was Medical Protective's actions which caused him to be uninsured.

■ Likewise, Dr. Egnatz did not establish Medical Protective waived its termination clause. While course of conduct and oral representations of agents may waive policy provisions of existing policies, it has been repeatedly held the doctrines of waiver and estoppel cannot be used to ex-

discussion of the implied covenant of good faith    and fair dealing was only dicta.

tend coverage. *Huff v. Travelers Indemnity Company* (1977), 266 Ind. 414, 363 N.E.2d 985, 992; *Prudential Insurance Company of America v. Clark* (5th Cir. 1972), 456 F.2d 932, 936; 16B Appleman, *Insurance Law and Practice* § 9090. Dr. Egnatz had express notice his coverage would not be continued. Dr. Egnatz failed to establish Medical Protective knowingly waived its termination clause by its long-term automatic renewals.

Dr. Egnatz contends two important public policies justify extending coverage beyond the duration specified in the contract. The first public policy allegedly violated is the prohibition of discrimination based on age. Dr. Egnatz asks the court to extend the Age Discrimination in Employment Act, 29 U.S.C. 621 *et seq.*, to non-employer relationships.

■ The evidence favoring Dr. Egnatz and the reasonable inferences therefrom reveal age was the reason for non-renewal. (R. 227, 254). Medical Protective acknowledges age is one of the factors in risk-coverage which contributes to an insurance company's decision whether to take a risk and issue insurance. Neither federal, state, or common law impose a duty to renew upon a medical liability insurance company. Extending an age discrimination statute to cover cases such as this is the legislature's prerogative, not the judiciary's.

■ The second public policy allegedly circumvented is Indiana's power to decide who may practice medicine. We fail to see how Medical Protective's decision not to insure Dr. Egnatz undermines the state's licensing authority. (IND.CODE 25–22.5–1–1.1 through 25–22.5–6–4). The record clearly indicates alternate, albeit not standard, coverage was available from IRMIA. Dr. Egnatz chose not to avail himself of this coverage. Thus, the decision not to arrange for insurance coverage in order to be permitted to perform surgery was Dr. Egnatz's.

Dr. Egnatz's public policy arguments are insufficient to establish a genuine issue of material fact exists for trial or Medical Protective is not entitled to judgment as a matter of law. Therefore, the trial court did not err in granting summary judgment in favor of Medical Protective.[3]

Medical Protective asserts it is entitled to attorney fees as sanctions because Dr. Egnatz's appeal is utterly devoid of all plausibility. It further asserts the appeal indicates bad faith, frivolity, and harassment. *See* Ind. Appellate Rule 15(G). It argues bad faith is evinced from the large number of cases Dr. Egnatz cites which do not stand for the proposition for which he claims to cite them.

■ App.Rule 15(G) sanctions should not be imposed unless there is an indication of bad faith, frivolity, harassment, vexatiousness, an intent to delay or a total lack of plausibility in the arguments. *Orr v. Turco Manufacturing Company, Inc.*, (1987), Ind., 512 N.E.2d 151, 153; *Posey v. Lafayette Bank and Trust Company* (1987), Ind., 512 N.E.2d 155, 156, *reh. denied, cert. denied* 485 U.S. 988, 108 S.Ct. 1292, 99 L.Ed.2d 502; and *Lesher v. Baltimore Football Club* (1987), Ind., 512 N.E.2d 156.

■ In the instant case, the trial court held Dr. Egnatz acted in good faith in pursuing this action. Likewise, we find no indication of bad faith in the appeal. While we consider his contentions insufficient to prevail on appeal, we find Dr. Egnatz presented an adequate brief and plausible arguments in support of the extension of existing insurance law. *Orr, supra*, at 153. Punitive sanctions are not justified in this case.

Affirmed.

CHEZEM and SHARPNACK, JJ., concur.

---

3. Medical Protective argues Dr. Egnatz did not, in fact, suffer damages. We need not address this issue. Medical Protective established there were no material issues of material fact and, as a matter of law, it did not have a duty to renew Dr. Egnatz's insurance. Damages only become a material fact question once a duty is found.